STATE of Missouri on the relation of Ian S. CAINE, a minor, Neal S. Caine, a minor, and Jean S. Caine, Relators,

v.

The Honorable Orville RICHARDSON, Judge of the Circuit Court of the County of St. Louis, Missouri, Respondent.

No. 41313.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 8, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 19, 1980.

Application to Transfer Denied
July 15, 1980.

Husch, Eppenberger, Donohue, Elson & Cornfeld, Harry B. Wilson, Jr., Alan B. Hoffman, St. Louis, for relators.

Moser, Marsalek, Carpenter, Cleay, Jaeckel, Keaney & Brown, Daniel Rabbit, George L. Fitzsimmons, Shepherd, Sandberg & Phoenix, Richard A. Mueller, St. Louis, for respondent.

Kenneth Teasdale, St. Louis, for amicus curiae, Hoffman.

SMITH, Presiding Judge.

Relators sought our alternative writ of mandamus to compel the respondent judge to assume jurisdiction over an underlying law suit and to set aside his order dismissing that suit as to Beech Aircraft Corporation. We issued that alternative writ which we now make permanent.

In the underlying litigation, plaintiffs, the children of a man killed in an airplane crash in 1976, seek recovery under the wrongful death statute for their father's death. They are residents of St. Louis County, as was their father. Named as defendants are (1) the estate of the pilot, David Hoffman;[1] (2) Festus Flying Service, owner of the airplane, and (3) Beech. The first two defendants are Missouri residents; Beech is a Delaware corporation with its principal place of business in Kansas. Beech manufactured the airplane in 1970 in the State of Kansas. It was sold one week after manufacture by Beech to Topeka Aircraft Sales and Service, Inc. of Kansas, a franchised-dealer of Beech products, and sold by that company to Fabick Machinery Company in St. Louis a week later. The airplane was subsequently sold one or more times and eventually became the property of Festus Flying Service. The airplane was chartered from Festus by Hoffman and plaintiff's decedent for a business trip from St. Louis to Texas. Upon the return flight to Missouri, the plane crashed in Arkansas. Plaintiffs' cause of action against Beech was based upon products liability, breach of warranty and specific negligence.

Plaintiffs obtained service on Beech under Sec. 351.633, the "single-act tort" long arm statute, and Sec. 506.150,[2] the general service statute for corporations "doing business" in Missouri. Beech filed a motion to dismiss or to quash service on the basis that the service was insufficient and that Beech was not subject to service under the statutes. The trial court granted the motion to dismiss. It is not contended that plaintiffs' petition failed to state a cause of action against Beech, and Beech's motion was directed solely to improper service. The proper order for the court to make if it found service improper was an order to quash that service. We will treat the order as one quashing service. *Color Process Company v. Northwest Screenprint Company*, 417 S.W.2d 934 (Mo.1967); *Continent Foods Corp. v. National-Northwood, Inc.*, 470 S.W.2d 315 (Mo.App.1971). Such an order is properly challenged by mandamus. *State ex rel. American Institute of Marketing Systems v. Cloyd*, 433 S.W.2d 559 (Mo. banc 1968).

---

1. We permitted Judith Hoffman, executrix of the Estate of David Hoffman, a defendant in the underlying case, to file suggestions in support of the writ sought by relators. Mrs. Hoffman and her children are also plaintiffs in a companion suit against Beech for the wrongful death of her husband. She has sought leave to file an exhibit from the latter case in this case. That motion is now denied.

2. Statutory references are to R.S.Mo.1978.

Respondent raises three contentions to support the invalidity of the service, i. e.: (1) Beech lacks sufficient contacts in Missouri to meet due process requirements, (2) Beech did not commit a tort "in whole or in part" in Missouri as required by Sec. 351.633, and (3) Beech is not "doing business" in Missouri and has no agent in Missouri sufficient to allow service under Sec. 506.150. We need reach only the first two contentions. Respondent makes no contention that the service made was not in compliance with the statutes if they applied.

Little need be said about the due process problem. Since *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) the law has been that:

> "[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." l. c. 316, 66 S.Ct. 158.

■ It is clear that such minimum contacts are met by a single act done or a single transaction consummated within the forum state if the cause of action arises from that act or transaction. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). It is also clear that if a corporation is in fact conducting business within a state it may be subject to personal jurisdiction in litigation not arising from the business transacted and the exercise of such jurisdiction does not violate the due process clause. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). The precise nature and quantum of the contacts necessary to support jurisdiction in the latter situation has not been definitely determined, if in fact they can be. *See* Annotation, Development of the doctrine of *Pennoyer v. Neff* as regards jurisdiction over nonresident individuals and foreign corporations—Supreme Court cases, 2 L.Ed.2d 1664, l. c. 1670.

■ Under either situation, we find here that Beech has sufficient contacts with Missouri to satisfy due process requirements. The company has two franchised dealers in Missouri.[3] They sell its aircraft to consumers in Missouri and are required to provide warranty service for which they charge Beech. The franchisees also utilize Beech parts for repair and maintenance. They also utilize the name Beech in the conduct of their business pursuant to authority granted by Beech in its franchise agreement. They are part of a nationwide system of dealerships which account for 97% of the sales of Beech aircraft nationally. Beech advertises its products in the state and throughout the nation and world. Operating through its Missouri dealers and franchisees, Beech has sold approximately 69 aircraft in Missouri between Nov. 29, 1972 and Jan. 31, 1978. This constitutes between .7% and 2.4% of its total United States sales of the aircraft types sold. This pattern of business in Missouri has continued since 1972. Beech has employees who come into Missouri to consult with and advise its franchisees. It has an employee residing in Missouri who serves as liaison with McDonnell-Douglas Aircraft for which Beech serves as a sub-contractor. He also acts as a liaison representative with U.S. military agencies in the St. Louis area. The airplane involved in the crash from which this suit originates was originally sold by a Beech dealer in Kansas to a Missouri corporation within two weeks after manufacture by Beech. Beech has engaged in continuous and systematic activity within this state. We find no unreasonable burden placed upon Beech in requiring it to defend in this state. We find that Beech has sufficient contacts with Missouri so that maintenance of a suit against Beech in the state does not offend "traditional notions of fair play and substantial justice." *See Ponder v. Aamco Automatic Transmission Inc.*, 536 S.W.2d 888 (Mo.App.1976).

---

**3.** One additional dealer has been franchised in Missouri since the inception of the suit.

We turn now to Sec. 351.633 the "single-act tort" statute.[4] This statute has been upheld as constitutional. *State ex rel. Deere and Company v. Pinnell*, 454 S.W.2d 889 (Mo. banc 1970). In the same case the court stated that the ultimate objective of this statute and Sec. 506.500 "was to extend the jurisdiction of the courts of this state over nonresident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States." 1. c. 892. Such a statement, of course, means the "extent permissible" for the act or conduct set forth in the statute, and does not refer to the limits which might be permissible for other conduct not specified in the statute.

■ We deal then with whether Beech is alleged to have committed a tort "in whole or in part" in Missouri. The cause of action here is based on strict liability of a manufacturer in tort. The elements of that tort are at least threefold: (1) design and/or manufacture (2) marketing the product by introducing it into the stream of commerce and (3) failure of the manufactured product resulting in injury, death or damage. That the second stated element is in fact an element is evident from *First National Bank of Mobile v. Cessna Aircraft Company*, 365 So.2d 966 (Ala.1978); *Winkler v. Hyster Company*, 54 Ill.App.3d 282, 12 Ill. Dec. 109, 369 N.E.2d 606 (1977), and *Breedlove v. Beech Aircraft Corp.*, 334 F.Supp. 1361 (N.D.Miss.1971). It may be conceded that neither manufacture nor failure of the product occurred in Missouri. We find, however, that the second element, marketing the product, did occur in Missouri.

In that connection, Relators appear to contend in part that having placed the airplane into the stream of commerce, Beech is subject to the jurisdiction of the Missouri courts if thereafter the airplane reaches Missouri in that stream. They contend this is true whether or not Beech is responsible for the transaction which brings the plane into Missouri so long as an ultimate contact with Missouri is foreseeable, which relators contend it is by the very nature of the product sold. In essence, they argue that the "marketing" element continues through any number of unrelated sales to a series of consumers so long as the product remains a part of commerce. This predicates jurisdiction on foreseeability of contact alone. This was the reasoning adopted by the courts in *Braband v. Beech Aircraft Corp.*, 51 Ill.App.3d 296, 9 Ill.Dec. 684, 367 N.E.2d 118 (1977) [this was apparently the view of only one of the three judges participating, although it is the opinion of the court] and *Breedlove v. Beech Aircraft Corp., supra.* Some doubt about the constitutional due process validity of such an approach must be present in view of the *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). We need not determine whether the Missouri statute reaches that far.[5]

■ It is clear from the cases that the original marketing of a product by placing it into the stream of commerce may be accomplished by the manufacturer either directly or indirectly. Whether or not the

4. "If a foreign corporation commits a tort . . . in whole or in part in Missouri against a resident or nonresident of Missouri, such act shall be deemed to be doing business in Missouri by the foreign corporation . . . ."

5. While it may be conceded that the manufacturer's liability for a defective product continues after the initial sale, it is questionable that its marketing activity continues after the product reaches the first consumer.

*World-Wide Volkswagen, supra*, held that foreseeability of contact alone did not meet due process requirements. More is required. Beech has enough Missouri contacts to subject it to the jurisdiction of Missouri courts. Section 351.633, however, is a single contact statute and we do not believe it can or should be interpreted to bring it into conflict with the due process clause as enunciated in *World-Wide*. Nor, should it be interpreted to allow jurisdiction against one defendant having substantial contacts while denying jurisdiction against another defendant with no contacts (only foreseeability) for the same "act." The statute should have the same meaning regardless of the other contacts of the defendant with the state. The general assembly may elect, of course, to subject multiple contact defendants to jurisdiction for a wider range of liability than it could impose upon a single-act defendant. In Sec. 351.633, it has not elected to do so.

sale to the initial consumer is actually made by the manufacturer is of no consequence, so long as the marketing is intentional and distribution into the forum state is an anticipated and foreseeable event as a part of the manufacturer's business. *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961); *Connelly v. Uniroyal, Inc.*, 55 Ill.App.3d 530, 13 Ill.Dec. 162, 370 N.E.2d 1189, aff'd on other grounds, 382 N.E.2d 155 (1977); *Buckeye Boiler Company v. Superior Court*, 71 Cal.2d 893, 80 Cal.Rptr. 113, 458 P.2d 57 (banc 1969). This is in keeping with modern merchandising methods and the recognition of such methods by the courts through the doctrines of strict liability. Privity is no longer a requirement for the assertion of liability against the manufacturer of a defective product. *Keener v. Dayton Electric Manufacturing Company*, 445 S.W.2d 362 (Mo.1969).

In the case at bar, we have no difficulty in concluding that the original marketing and placement of the allegedly defective airplane was done, at least indirectly, by Beech and that such initial marketing and placement occurred in Missouri. The airplane was sold within a week after manufacture to Topeka Aircraft Sales & Service, a franchised dealership. Topeka is not claimed to be, and realistically is not, the consumer for whom the plane was produced. It is the medium utilized by Beech to get its product to the ultimate consumer. Within another week the airplane was sold to a St. Louis corporation and was either picked up by that corporation and flown into Missouri or was delivered by Topeka to Missouri. Both methods are used in sales from Topeka to Fabick. Whether execution of the sale contract and delivery of the airplane to the consumer occurred in Missouri is immaterial under the modern cases. *State ex rel. Birdsboro Corp. v. Kimberlin*, 461 S.W.2d 292 (Mo.App.1970); *State ex rel. Apco Oil Corp. v. Turpin*, 490 S.W.2d 400 (Mo.App.1973). The transaction involved marketing into Missouri by Beech to the initial consumer. That constituted the commission of an element of the tort in this state and subjected Beech to jurisdiction of the courts of this state under Sec. 351.633.

We reject respondent's contention that the language "in whole or in part" requires that the injury occur in Missouri. The language "in part" is not so restricted. *See, Simon v. Kansas City Rug Company*, 460 S.W.2d 596 (Mo.1970). Nor, does the venue provision of the statute carry such a requirement. That provision is permissive and does not restrict venue to the place of accident. Sec. 351.633.5.

Our alternative writ of mandamus commanding respondent or his successor to set aside his order quashing service and dismissing relators' petition and commanding respondent to exercise jurisdiction over relators' petition as against Beech is made peremptory.

SATZ, J., and ALDEN A. STOCKARD, Special Judge, concur.