STATE of Missouri, ex rel. Mark J.
NEWPORT, Relator,

v.

Honorable Melvyn WIESMAN, Judge of
the Circuit Court of the County of St.
Louis, Respondent.

No. 62788.

Supreme Court of Missouri,
En Banc.

Feb. 9, 1982.

Rehearing Denied March 9, 1982.

Don B. Sommers, Prudence W. Kramer,
St. Louis, for relator.

John C. Shepherd, Richard A. Mueller, St.
Louis, for respondent.

MANDAMUS

WELLIVER, Judge.

This is an original proceeding in mandamus. Relator, Mark J. Newport, sought an alternative writ of mandamus to compel the respondent, Judge Melvyn Wiesman, to assume jurisdiction over the underlying law suit between Newport and Beech Aircraft Corporation (Beech) and to set aside his order which was phrased in terms of dismissing the law suit for lack of personal jurisdiction but which amounted to an order quashing the service herein. The Missouri

Court of Appeals, Eastern District, issued a preliminary writ and later quashed that writ. We ordered this case transferred because we view the issues involved herein to be of general interest and importance. Rule 83.03.[1] We conclude that Beech Aircraft Corporation, defendant in the underlying suit, is subject to the jurisdiction of Missouri courts with respect to the cause of action brought by relator and order the preliminary writ made peremptory.

Portions of the court of appeals opinion have been adopted and used herein without quotation marks.

The underlying litigation arose when the plane in which relator, Mark J. Newport, was riding crashed in Chamblee, Georgia. Relator, a resident of St. Louis County, instituted suit for personal injuries in the Circuit Court of St. Louis County against the pilot of the plane, George Richmond,[2] and the plane's manufacturer, Beech Aircraft Corporation. Defendant Richmond is a resident of St. Louis County. Beech is a Delaware Corporation with its principal place of business in Kansas.

It is undisputed that Beech manufactured the plane at its facility in the state of Kansas. Beech sold the plane, on July 13, 1964, to the Elliott Flying Service, an entity in Illinois. The plane was subsequently sold one or more times and ultimately was purchased by the Flib Flying Club of Missouri. Flib housed, serviced and maintained the aircraft in Missouri. Defendant Richmond was a member of the flying club and took the plane for the purpose of flying relator and himself to Atlanta, Georgia, to attend a business meeting. The plane, crashed on take off for the return flight to St. Louis. Relator's cause of action against Beech for damages was grounded on strict liability in tort for the manufacture of a defective airplane.

Relator obtained process upon defendant Beech by personal service in the state of Kansas pursuant to the provisions of §§ 506.500 [3] and 506.510.[4] Beech filed a motion to dismiss or in the alternative to

---

1. All references to Missouri Rules of Civil Procedure are to those effective in 1982, unless otherwise indicated.

2. Plaintiff has settled his claim against defendant George Richmond.

3. Section 506.500 provides:
   1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
   (1) The transaction of any business within this state;
   (2) The making of any contract within this state;
   (3) The commission of a tortious act within this state;
   (4) The ownership, use, or possession of any real estate situated in this state;
   (5) The contracting to insure any person, property or risk located within this state at the time of contracting.
   2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

All statutory references are to RSMo 1978, unless otherwise indicated. *See also* Rule 54.06.

4. 506.510. Service, how made—affidavit. —1 Service of process upon any person who is subject to the jurisdiction of the courts of this state as provided in section 506.500, may be made by personally serving the process upon the defendant outside this state, or upon a corporation by serving the process upon a managing officer or any person or corporation who shall be designated as a registered agent by such corporation in any of the several states, and shall have the same force and effect as though the process had been served within this state.
   2. The process, together with a copy of the petition, and necessary fees shall be sent to a court of record or court officer at the place where the defendant may be served with process, and may be personally served upon the defendant by the person authorized to serve process at that place.
   3. An affidavit of the person serving the process shall be returned to the office of the clerk or judge from which it issued. The affidavit shall state the time, manner and place of service of the process and of the copy of the petition. The court may consider the affidavit, or any other competent evidence, in determining whether service has been properly made.

quash service on the basis that it was not subject to personal jurisdiction under any provision of § 506.500. The trial court granted the motion. Defendant Beech does not argue that relator has failed to state a cause of action. Since the sole basis for Beech's motion was that service was improper, the proper order for the trial court to have made if it found service improper was an order to quash that service. *State ex rel. Caine v. Richardson*, 600 S.W.2d 82, 83 (Mo.App.1980). We will treat the order as one quashing service which may be challenged by mandamus.

Relator asserts that Beech has been involved in the transaction of business within this state and that his cause of action arose from such business transactions. § 506.-500.1(1). Relator further asserts that Beech was involved in the commission of a tortious act within this state and that his cause of action arose from such tortious act. § 506.-500.1(3). Relator also contends that Beech has sufficient contacts with Missouri that it would not offend due process to compel Beech to defend itself in Missouri courts with respect to the underlying cause.

Respondent argues that relator's cause of action against Beech did not arise either from the transaction by Beech of any business within Missouri or from the commission by Beech of a tortious act within Missouri. Respondent also argues that Beech does not have "minimum contacts" with Missouri sufficient to compel Beech to defend itself in Missouri courts without offending "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

I

The Court in *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. banc

1970), declared that, in enacting § 506.500, "the ultimate objective was to extend the jurisdiction of the courts of this state over non-resident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States." *Accord State ex inf. Danforth v. Reader's Digest Association, Inc.*, 527 S.W.2d 355, 358 (Mo. banc 1975); *M & D Enterprises, Inc. v. Fournie*, 600 S.W.2d 64, 68 (Mo.App.1980). Pursuant to this objective, Missouri courts have interpreted the words "transaction of any business within this state" or "commission of a tortious act within this state" broadly so as not to deny jurisdiction under § 506.500 in situations in which the due process clause would permit the assertion of personal jurisdiction. *Simpson v. Dycon International, Inc.*, 618 S.W.2d 455 (Mo.App.1981); *State ex rel. Caine v. Richardson*, 600 S.W.2d 82 (Mo.App.1980); *State ex rel. Farmland Industries, Inc.*, 560 S.W.2d 60 (Mo.App.1977); *State ex rel. Peoples Bank of Bloomington v. Stussie*, 536 S.W.2d 934 (Mo.App.1976); *Ponder v. Aamco Automatic Transmission, Inc.*, 536 S.W.2d 888 (Mo.App.1976). *See also Connelly v. Uniroyal, Inc.*, 75 Ill.2d 393, 27 Ill.Dec. 343, 389 N.E.2d 155, 158–60 (1979), *cert. denied, appeal dismissed, Uniroyal Englebert Belgique, S.A. v. Connelly*, 444 U.S. 1060, 100 S.Ct. 992, 62 L.Ed.2d 738 (1980); *Marquette National Bank v. Norris*, 270 N.W.2d 290, 294–95 (Minn.1978).

Respondent relies heavily upon the language of subsection 2 of § 506.500, suggesting that it requires a narrow reading of the acts enumerated in subsection 1 of § 506.-500. We believe respondent misunderstands the purpose of subsection 2.

Section 506.500 and related statutes were modeled after Chapter 110, § 17, Ill.Ann. Stat.1968.[5] *State ex rel. Deere & Co. v.*

---

**5.** (1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

　(a) The transaction of any business within this State;

　(b) The commission of a tortious act within this State;

*Pinnell*, 454 S.W.2d at 891–92. Subsection 3 of that Illinois statute was, at the time Missouri used it as a model, and still is nearly identical to § 506.500.2. The purpose of subsection 3 of the Illinois act is explained in the Joint Committee Comments following Chapter 110, § 17 which provide:

> Subsection (3) protects non-residents against the assertion, in an action in which jurisdiction has been obtained under this section, of causes of action not within the scope of the section. Thus, it would prohibit a plaintiff who obtains jurisdiction over a defendant under subsection (1) from asserting by amendment or otherwise a cause of action not within that subsection.

Subsection 3 was not intended to cause a narrow interpretation of the acts enumerated in subsection 1 of Chapter 110, § 17. It was designed to prohibit joinder of a cause of action not arising from the acts enumerated in subsection 1 with a cause of action arising from those acts. We have held that when one state adopts a statute of another state which the courts of the latter state have construed, such construction will be held to have been adopted along with the statute. *State ex rel. Phillip Transit Lines v. Public Service Commission*, 552 S.W.2d 696, 700 (Mo. banc 1977); *State v. Anderson*, 515 S.W.2d 534, 539 (Mo. banc 1974). *Scheidegger v. Greene*, 451 S.W.2d 135, 139 (Mo.1970). We also believe that the Missou-

ri General Assembly, in enacting § 506.-500.2 was aware of the meaning attributed to the Illinois statute by the Joint Committee Comments, and intended those terms as incorporated in our own statute to have similar import and meaning. *See State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d at 892.

■ First we must determine whether the requirements of § 506.500.1 have been met; that is, whether the cause of action at issue in the underlying case arose either from "transaction of any business within this state" by Beech, § 506.500.1(1), or from "commission of a tortious act within this state" by Beech. It has been held that there was "transaction of any business within this state" where each one of eight conferences held in Missouri contributed to eventual agreement on a marketing contract,[6] where numerous meetings between the plaintiff and the defendants' agent held in Missouri culminated in an option agreement,[7] and where the defendant foreign corporation executed a franchise agreement with a Missouri corporation pursuant to which the franchisee Missouri corporation did business.[8] The establishment in Missouri of two franchised dealers for the purpose of sale and service of aircraft clearly constitutes "transaction of any business within this state" within the meaning of § 506.-500.1(1).

This holding renders it unnecessary to consider whether Beech committed a tor-

---

(c) The ownership, use, or possession of any real estate situated in this State;

(d) Contracting to insure any person, property or risk located within this State at the time of contracting;

(e) With respect to actions of divorce and separate maintenance, the maintenance in this State of a matrimonial domicile at the time the cause of action arose or the commission in this State of any act giving rise to the cause of action.

(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this Section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State.

(3) Only causes of action arising from acts enumerated herein may be asserted against a

defendant in an action in which jurisdiction over him is based upon this Section.

(4) Nothing herein contained limits or affects the right to serve any process in any other manner now or hereafter provided by law.

Ch. 110, § 17, Ill.Ann.Stat.1968. This statute has since been amended but remains identical in all pertinent respects. 1979 Ill.Legis.Serv. P.A. 81–230, § 16, p. 560 (West).

6. *State ex rel. Farmland Industries, Inc.*, 560 S.W.2d 60 (Mo.App.1977).

7. *State ex rel. Peoples Bank v. Stussie*, 536 S.W.2d 934 (Mo.App.1976).

8. *Ponder v. Aamco Automatic Transmission, Inc.*, 536 S.W.2d 888 (Mo.App.1976).

tious act within Missouri within the meaning of § 506.500.1(3).

## II

■ We turn now to consideration of the due process clause requirements. Does the business done by Beech in Missouri constitute the "minimum contacts" necessary to permit Missouri courts to assert personal jurisdiction over Beech in the underlying case?

In the recent case *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 563, 62 L.Ed.2d 490 (1980), the Supreme Court reaffirmed the principle that "a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State." (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

> [T]he defendant's contacts with the forum State must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington, supra* [326 U.S.] at 316 [66 S.Ct. at 158], quoting *Milliken v. Meyer*, 311 U.S. 457, 463 [61 S.Ct. 339, 342, 85 L.Ed. 278] (1940). The relationship between the defendant and the forum must be such that it is "reasonable ... to require the corporation to defend the particular suit which is brought there."

(Citations omitted.) *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 292, 100 S.Ct. at 564 (quoting *International Shoe Co. v. Washington*, 326 U.S. at 317, 66 S.Ct. at 158.

The Supreme Court in *World-Wide Volkswagen* held that a state court cannot, consistently with the due process clause of the fourteenth amendment, exercise personal jurisdiction pursuant to its long-arm statute over a nonresident automobile retailer and its wholesale distributor for purposes of a products liability action brought against them, where the only connection between the forum state and the defendants is the fortuitous circumstance that the automobile happened to become involved in an accident giving rise to the products liability action while the automobile was passing through the forum state. The automobile had been sold by the retailer in New York, where the retailer and wholesaler were incorporated and did business, to residents of New York, who became involved in the accident while moving to Arizona. The defendants carried on no business activity whatsoever in the forum state. They closed no sales and performed no services there. They solicited no business there. There was no evidence that they regularly sold cars at wholesale or retail to Oklahoma customers or residents or that they indirectly served or sought to serve the market in the forum state.

The Supreme Court explained that foreseeability that a product might find its way into the forum state is not the criterion for determining whether assertion of personal jurisdiction is permissible.

> Rather, it is that defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.
>
> . . . .
>
> [I]f the sale of a product of a manufacturer ... is not simply an isolated occurrence, but arises from the effort of the manufacturer ... to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury....

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. at 567. "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), *accord World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. at 567; *Kulko v. Superior Court of California*, 436 U.S. 84, 95, 98 S.Ct. 1690, 1698, 56 L.Ed.2d 132 (1978). *See generally* Annot., 62 L.Ed.2d 853 (1981).

Applying these principles to the facts of this case, we conclude that Beech has the

requisite "minimum contacts" with Missouri. Although the record before this Court is sparce, facts adduced in a recent case involving Beech as a defendant in a products liability suit revealed the nature of the contacts between Beech and Missouri. The Court of Appeals, Eastern District, in *State ex rel. Caine v. Richardson*, 600 S.W.2d 82, 84 (Mo.App.1980), found the following contacts.

The company has two franchised dealers in Missouri. They sell its aircraft to consumers in Missouri and are required to provide warranty service for which they charge Beech. The franchisees also utilize Beech parts for repair and maintenance. They also utilize the name Beech in the conduct of their business pursuant to authority granted by Beech in its franchise agreement. They are part of a nationwide system of dealerships which account for 97% of the sales of Beech aircraft nationally. Beech advertises its products in the state and throughout the nation and world. Operating through its Missouri dealers and franchisees, Beech has sold approximately 69 aircraft in Missouri between Nov. 29, 1972 and Jan. 31, 1978. This constitutes between .7% and 2.4% of its total United States sales of the aircraft types sold. This pattern of business in Missouri has continued since 1972. Beech has employees who come into Missouri to consult with and advise its franchisees. It has an employee residing in Missouri who serves as liaison with McDonnell-Douglas Aircraft for which Beech serves as a subcontractor. He also acts as a liaison representative with U. S. military agencies in the St. Louis area.

An affidavit of the Secretary-Treasurer of Beech filed in the instant case discloses that Beech employs a person residing in Missouri who serves as liaison between Beech and McDonnell-Douglas Aircraft, for which Beech performs work as a sub-contractor. This employee also serves as a liaison with other companies "in the same general area" with which Beech has contracts to produce military supplies. Examination of a "Sales and Service Agreement" entered into by Beech and its distributors reveals that the distributors sell four models of Beech aircraft to Missouri consumers and provide warranty, repair, and maintenance services for its customers using exclusively Beech parts and equipment. Beech maintains some degree of control over the inventory, facilities, and marketing of the aircraft it supplies the distributors and reserves the right to make market surveys in each distributor's area and to inspect the distributor's facilities and personnel. The distributors are to supply Beech with sales and marketing information as requested by Beech.

Unlike the situation in *World-Wide Volkswagen*, the defendant here made efforts to serve indirectly the market for its products in the forum state. Although the airplane at issue is not one of the four Beech models sold by the Missouri franchisees, it is nevertheless true that Beech "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen v. Woodson*, 444 U.S. at 298, 100 S.Ct. at 567. Also unlike the situation in *World-Wide Volkswagen*, the relator (plaintiff) has brought suit in the state where he resides, not in some state he happened to be passing through when his cause of action accrued, and Missouri has an interest in adjudicating this dispute involving one of its residents. *See McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1951). Beech has many more contacts with Missouri than the defendant had with Illinois in *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961), which the Supreme Court cited in *World-Wide Volkswagen* as an example of the proposition. "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen v. Woodson*, 444 U.S. at 297–98, 100 S.Ct. at 567. In *Gray*, the Supreme Court of Illinois held that the requisite "minimum contacts" were present between Illinois and

a nonresident defendant corporation which in Ohio manufactured a safety valve that was sold to a company which in Pennsylvania incorporated the safety valve into a hot water heater that eventually was sold to an Illinois consumer who was injured when the water heater exploded. The record in that case did not disclose whether the defendant had done any other business in Illinois, either directly or indirectly. *Gray v. American Radiator & Standard Sanitary Corp.*, 176 N.E.2d at 764. *See also Clements v. Barney's Sporting Goods Store*, 84 Ill.App. 3d 600, 40 Ill.Dec. 342, 406 N.E.2d 43 (Ill.App.1980). Beech also has considerably more, purposeful contacts with Missouri than the relator bank had in *State ex rel. Bank of Gering v. Schoenlaub*, 540 S.W.2d 31 (Mo. banc 1976).

This case presents far different circumstances than confronted the Court in *Sperandio v. Clymer*, 581 S.W.2d 377 (Mo. banc 1979) (*Sperandio II*)[9] in which we held that minimum contacts were *not* present between Missouri and the defendant physician, Dr. Pemberton, a resident of Utah. Dr. Pemberton, in response to an unsolicited letter from Sperandio's doctor, diagnosed a congenital hip problem in Sperandio (plaintiff in an underlying action). He did so by means of a letter and markings on an X-ray of Sperandio's hip which Sperandio's doctor had sent to him along with the unsolicited letter. The record indicated that Dr. Pemberton had received no fee for his diagnosis and advice and that he had not been in Missouri since he was stationed at Jefferson Barracks in 1944 while in the medical corps. The only contact between Dr. Pemberton and Missouri was his response to the unsolicited letter of Sperandio's doctor. The underlying case involved one count of medical malpractice and one count of conspiracy.

The instant case on the other hand, involves a defendant with a great many contacts with Missouri, contacts which are designed ultimately to earn revenue for Beech

and which are not simply the result of an unsolicited communication regarding a Missouri citizen or corporation. Beech is not an individual who provides professional services. It is a large corporation that introduces its products into the stream of interstate commerce fully aware that they will be sold and resold in Missouri. *See Buckeye Boiler Co. v. Superior Court of Los Angeles County*, 71 Cal.2d 893, 80 Cal.Rptr. 113, 458 P.2d 57 (Cal. banc 1969). Clearly Beech has sought to serve the market for its products in Missouri; it is not unreasonable to subject it to suit here on a claim that its allegedly defective product has been the source of injury. *See World-Wide Volkswagen v. Woodson*, 444 U.S. at 297, 100 S.Ct. 567.

Beech is subject to personal jurisdiction in Missouri's courts with respect to the cause of action brought by relator. We order the preliminary writ made peremptory.

All concur.

---

**9.** In *Sperandio I, State ex rel. Sperandio v. Clymer*, 568 S.W.2d 935 (Mo. banc 1978), this Court held that minimum contacts did exist between the defendant nonresident physician and the state of Missouri and that the cause of action had arisen from the commission of a tortious act in Missouri. *See* § 506.500.1(3). That decision was vacated and remanded in light of *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). *Pemberton v. Sperandio*, 439 U.S. 812, 99 S.Ct. 935, 58 L.Ed.2d 103 (1978).