**THUNDERBIRD MOTOR FREIGHT LINES, INC., Plaintiff,**

v.

**CONSOLIDATED PIPE & SUPPLY CO., INC. OF MISSOURI, and Concol Pipe, Inc., Defendants.**

**No. 83–1791C(B).**

United States District Court, E.D. Missouri, E.D.

Oct. 24, 1983.

Richard Shaikewitz, Wiseman, Shaikewitz, McGivern & Wahl, Alton, Ill., for plaintiff.

Douglas Rush, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for Concol Pipe.

### MEMORANDUM AND ORDER

REGAN, District Judge.

This matter is before the Court on motion of defendant Concol Pipe, Inc. (Concol) to dismiss for lack of jurisdiction over the person and for improper venue.

This suit is against Concol and its wholly owned subsidiary, Consolidated Pipe & Supply Co. Inc. (Consolidated), on the theory that both defendants are liable for payment of freight bills for 37 shipments made by plaintiff from September 28, 1982 to March 7, 1983. Concol is an Alabama corporation whose principal place of business is in Alabama. It is not licensed or authorized to transact business in Missouri. Consolidated is a Missouri corporation. Plaintiff is a citizen of the state of Indiana with an office in Illinois.

Jurisdiction over this action is asserted in the complaint by reason of diversity of citizenship as well as federal question jurisdiction under the provisions of the Interstate Commerce Act as construed by the Supreme Court in *Thurston Motor Lines v. Jordan Rand, Ltd.*, 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983). However, although plaintiff now disclaims reliance on the obvious fact of diversity, *Thurston* does not touch upon the issue of either personal jurisdiction or venue. What was there involved (just as in diversity cases) was *subject matter* jurisdiction, a question which does not bear upon the present motion to dismiss.

In *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464 (1979), the Supreme Court held that "(t)he question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum", unless "there is a sound prudential justification", not here present, for reversing "the normal order of considering these issues." Accordingly, we first determine the question of personal jurisdiction over Concol.

As stated in *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 653 (8th Cir.1980), "(o)ur inquiry is a two-part one: first, whether the facts presented satisfy the [state's] statutory requirements, and, second [if so], whether the exercise of personal jurisdiction is consistent with due process." The statutory requirements for a general judgment on service outside the state, as set forth in Section 506.500 RSMo (and Rule 54.06 of the Missouri Supreme Court Rules), are (to the extent here relevant) (1) "(t)he transaction of any business within this state" or (2) "the making of any contract within this state." The foregoing

requirements are not to be narrowly interpreted, in view of the holding of the Missouri Supreme Court that in enacting Section 506.500, "the ultimate objective" of the General Assembly "was to extend the jurisdiction of the courts of this state over nonresident defendants to the extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States." *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. banc 1970), reaffirmed in *State ex rel. Newport v. Wiesman*, 627 S.W.2d 874, 876 (Mo. banc 1982).

Bearing in mind that the burden of establishing (at least prima facie) that personal jurisdiction exists is upon the plaintiff (*Scullin Steel v. National Railway Utilization Corp.*, 676 F.2d 309, 311 (8 Cir. 1982)) we examine the facts of record. The complaint alleges that Concol and Consolidated "are owned by the same principals and carried on business as one single entity." Concol denies the allegation that defendants have ever carried on business as a single entity and contends that it has never transacted business in this state. Its affidavit in support of its motion specifically denies that it contracted with plaintiff to carry the freight alleged in the complaint.

Admittedly, Consolidated is wholly owned by Concol. Its president is also chairman of Concol's Board (or at least was apparently so in 1981). It is evident that the relationship between the two defendants is that of parent (Concol) and subsidiary (Consolidated) and that by virtue of its ownership, Concol has the right to elect the officers and directors of Consolidated. However, they are separate and distinct corporate entities under the facts of record. There is no factual basis for finding that the corporate separation was fictional or other than real.

■ The mere fact, if so, that the two corporations may have interlocking officers and directors does not demonstrate that Concol controls, dictates or actively participates in the day-to-day management and business operations of its subsidiary so as to make Consolidated the agent or alter ego of Concol. We note that plaintiff has submitted a Dun & Bradstreet report on Consolidated which states "Intercompany relations: *confined* to merchandise transfers advances *on regular terms.*" It would therefore appear that Concol simply sold pipe to Consolidated in much the same way it sold pipe to other companies in which it had no ownership interest.

■ Other than its reliance on the parent-subsidiary relationship of defendants, the only material submitted by plaintiff consists of unverified copies of invoices and related documents pertaining to several shipments and an affidavit of plaintiff's vice-president who is in charge of sales and dispatch. The affiant states in general language that on various occasions in late 1982 and early 1983, he and other dispatchers would receive telephone calls in Madison, Illinois from St. Louis from unnamed persons requesting freight movements, and that the "persons" calling would sometimes use the name Concol and sometimes use the name Consolidated and on other occasions would interchange the names during the same call. However, there is no showing that any of these unidentified "persons" were agents of Concol or otherwise authorized by Concol to use its name, nor for that matter that such "persons" were aware of the implications of their use of Concol's name. So, too, there is no showing that Concol knew of and ratified such use of its name. And, so far as we are advised, Concol has never had any prior dealings with plaintiff nor paid for any shipments allegedly requested in its name.

We hold that plaintiff has failed to sustain its burden of making a prima facie showing of facts which would authorize Missouri to provide a forum to a nonresident of this state for the exercise of personal jurisdiction over Concol under the Missouri Long Arm Statute consistently with the Due Process Clause of the Fourteenth Amendment. Accordingly, Concol's motion to dismiss as to it for lack of personal jurisdiction will be and is hereby sustained. In so doing, we express no opinion as to whether, as consignor, Concol may in

another forum be held liable to plaintiff under federal law for any of the freight bills. For purposes of the instant motion we limit our holding to the issue of whether plaintiff has demonstrated, prima facie, that Concol is or was transacting business in Missouri and whether it made a contract in Missouri.

The foregoing ruling moots Concol's alternative motion to dismiss or transfer for improper venue.