INSTITUTIONAL FOOD MARKETING ASSOCIATES, LTD., & Food Service Systems, Inc., Plaintiffs-Appellants,

v.

GOLDEN STATE STRAWBERRIES, INC., Defendant-Appellee.

No. 84–1013.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1984.

Decided Oct. 30, 1984.

---

Mark D. Mittleman, Clayton, Mo., for plaintiffs-appellants.

Theodore J. MacDonald, Jr., St. Louis, Mo., for defendant-appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The plaintiffs, Institutional Food Marketing Associates, Ltd. (FMA), and Food Service Systems, Inc. (FSS), appeal from the district court's [1], 587 F.Supp. 1105, grant of

---

1. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

the defendant's, Golden State Strawberries, Inc. (GSS), motion to dismiss for lack of personal jurisdiction. We affirm.

## I. Facts

FMA and FSS have been contracting with each other for the sale and purchase of strawberries for a number of years. FMA is a Missouri corporation with its principal place of business in Missouri, and FSS is a Minnesota corporation also with its principal place of business in Missouri. FMA acquired strawberries for FSS through Coastal Marketing Associates, Inc. (Coastal), a California corporation with its principal place of business in California. In turn, Coastal acquired its strawberries, in this case, from Golden State Strawberries (GSS/Consolidated), a California packer owned in part by Consolidated Processors of California. GSS/Consolidated paid Coastal's commission.

The usual procedure for acquiring strawberries was as follows. FMA and FSS would enter into a contract that called for FMA to deliver and FSS to buy a certain amount of strawberries for the upcoming year. Then FMA would contact Coastal and ask it to obtain the strawberries needed to fulfill the FMA/FSS contract. Coastal sent the invoices for the strawberries it obtained directly to FSS. FSS then would pay Coastal an amount that included the packer's price, Coastal's commission, and FMA's commission. After deducting the packer's price to (GSS/Consolidated) and its own commission, Coastal would send the balance to FMA.

For the 1982/83 year, FMA and FSS entered into a contract. The contract stipulated the amount of strawberries to be purchased, the purchase price, carrying charges, specifications for shipping, and storage specifications. The contract also contained a clause which protected FSS against a drop in the market price of strawberries after August 30, 1982.[2]

Following general practice, FMA called upon Coastal to get the strawberries needed to fulfill the FMA/FSS contract. Coastal, in turn, contacted the packer, GSS/Consolidated. Coastal and GSS/Consolidated exchanged documents dated June 11, 1982. Coastal's document, sales memo no. 8588, listed GSS as the seller and FSS as the buyer. Coastal's document also contained a "price protection clause," in accordance with the FMA/FSS contract, which would have protected FSS against a drop·in the market price of strawberries. GSS/Consolidated's June 11 memo, sales memo no. 3719, agreed with Coastal's document in all respects except that memo no. 3719 did not contain a price protection clause. On June 21, GSS/Consolidated brought this discrepancy to Coastal's attention.[3] On August 13, 1982, Coastal notified FMA that GSS/Consolidated was not honoring the protection clause.[4]

Nonetheless, during June, July, and August of 1982, Coastal procured for shipment to FSS nine truckloads of strawberries from GSS/Consolidated at the contract price. After August, the list price of strawberries fell below the contract price. Coastal and GSS/Consolidated had several

---

**2.** The contract provided that "should the price list be less than our contract price plus [FSS'] monthly carrying charge, [FSS] will receive the lower throughout the term of the contract."

**3.** GSS/Consolidated's June 21 memo stated: "Please note that the Item 4 [the price protection clause] in your memo does not pertain to this sale." The June 21 memo also stated: "Enclosed is our Sales Memo 3719 covering the sale between Food Service Systems and Golden State Strawberries." Also, Coastal's memo no. 8588 had noted that a copy of the FMA/FSS contract was attached. The copy was not attached. GSS/Consolidated brought this to Coastal's at-

tention via a memo dated August 11, 1982. Coastal responded by sending GSS/Consolidated a copy of the FMA/FSS agreement.

**4.** The letter from Coastal to FMA provided as follows:

I am attaching a sales memo from [GSS/Consolidated] along with a speed letter covering the [FSS] contract. You will note that [GSS/Consolidated] is not honoring item no. 4 outlined on my sales memo 8588 and the paragraph in your contract letter, wherein, we will protect [FSS'] price against our own price list.

discussions about the price at which GSS/Consolidated would continue to sell strawberries to FSS. GSS/Consolidated maintained that it would sell fruit to FSS only at the original contract price, plus the storage charges incurred after August of 1982. This position was unacceptable to FMA, as it was required by contract to protect FSS from price falls. In March of 1983, GSS/Consolidated and FMA had a discussion which failed to produce a solution acceptable to both parties to the price dispute. As a result, FMA informed GSS/Consolidated that it would obtain strawberries from a different source, and proceeded to do so.

On March 17, 1983, GSS/Consolidated sent a mailgram to FSS which stated as follows:

> We were advised orally that you are not going to perform under our contract Number 3719 for frozen strawberries. We are hereby giving you notice that we expect performance and ask that you respond directly to me at Golden State Strawberries within 5 days whether or not you intend to perform.

FSS responded, telling GSS/Consolidated that there was no contract between them. FSS also called upon FMA to take action to protect FSS against a GSS/Consolidated claim. FMA then retained an attorney who notified GSS/Consolidated that there was no contract between GSS/Consolidated and FMA, FSS or Coastal. Nevertheless, GSS/Consolidated continued to contact FSS, and finally notified FSS that it intended to perform in full and would transfer any unshipped fruit into storage under FSS' name. GSS/Consolidated did transfer the remaining shipments into storage, and charged FSS at the contract price for them. FSS received via Coastal two bills for storage charges, which were forwarded to FMA.

In May of 1983, FMA and FSS filed this lawsuit for declaratory, injunctive and damages relief in the state Circuit Court in St. Louis County, Missouri. GSS/Consolidated, pursuant to 28 U.S.C. § 1441(a) (1982), removed this action to the federal district court in Missouri. In count one of their complaint FMA and FSS sought from the district court a declaration that there was no contract between either of them and GSS/Consolidated. In counts two and three of the complaint FMA and FSS alleged that GSS/Consolidated had intentionally and tortiously interfered with their contractual relationship, and sought an injunction against future interference, plus actual and punitive damages. In all counts, FMA and FSS alleged that Coastal was the agent of GSS/Consolidated. The district court granted GSS/Consolidated's motion to dismiss for lack of personal jurisdiction.

## II. Discussion

The district court dismissed the FMA/FSS tort claim because, in effect, they failed to establish jurisdiction under Missouri's long arm statute. The district court dismissed the FMA/FSS contract claims because it determined that GSS/Consolidated's contacts with Missouri were not sufficient to satisfy due process standards for personal jurisdiction. FMA and FSS assert that these rulings were incorrect. We disagree.

■ Initially, our inquiry consists of two parts. First we must decide whether the facts presented satisfy the requirements of Missouri's long arm statute. *Sales Serv., Inc. v. Daewoo Int'l (Am.) Corp.*, 719 F.2d 971, 972 (8th Cir.1983); *Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 312 (8th Cir. 1982). Once jurisdiction has been controverted or denied the plaintiff has the burden of proving that jurisdiction does exist, and the burden may not be shifted to the party challenging the motion. *Scullin Steel*, 676 F.2d at 311; *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir.1977); *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir.1974).

■ A federal court sitting in a diversity action may assume jurisdiction over a nonresident defendant to the extent permitted by the long arm statute of the forum

state. *Mountaire Feeds, Inc. v. Agro Impex*, S.A., 677 F.2d 651, 653 (8th Cir.1982), *quoting, Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1264 n. 2 (5th Cir.1981). Subject to the limitations of the due process clause, we give the same construction to a state long arm statute that the courts of that state have given to it. *Pioneer Ins. Co. v. Gelt*, 558 F.2d 1303, 1309 (8th Cir.1977). Missouri's long arm statute provides, in pertinent part, as follows:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, [his/her] personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

(3) The commission of a tortious act within this state * * *.

2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction * * * is based upon this section.

*Mo.Rev.Stat.* § 506.500 (1978).

The Missouri Supreme Court has held the state long-arm statute "to extend the jurisdiction of the courts of this state over nonresidents to the extent permissible under the Due Process Clause." *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo.1970) *(en banc)*.

### A. The tort claim

 Missouri case law construes the phrase "commission of a tortious act within the state" to include extraterritorial acts that produce actionable consequences in Missouri. *Fulton v. Chicago R.I. & P. R.R. Co.*, 481 F.2d 326, 331 (8th Cir.), *cert. denied sub nom. Soo Line R.R. Co. v. Fulton*, 414 U.S. 1040, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973) (citing Missouri case law). A single tortious act may be sufficient to justify a Missouri court's exercise of personal jurisdiction over a nonresident defendant. *State ex rel. Caine v. Richardson*, 600 S.W.2d 82, 84 (Mo.Ct.App.1980).

FMA and FSS argue first that the district court erred in holding that, in order to establish jurisdiction, they were required to establish a *prima facie* case of tortious interference with their contract. Second, they argue that even if the district court was correct in so holding, it was error to dismiss their claim because they established a *prima facie* case of the tort. We disagree with both arguments.

 In this case, the only basis for the district court's jurisdiction would have been facts alleging the occurrence of a tort. A plaintiff seeking to bring a defendant into court under a state long arm statute must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state. Thus, a plaintiff must make a *prima facie* showing that the tort has been committed. *Scullin Steel*, 676 F.2d at 311, *quoting, Aaron Ferer & Sons II*, 564 F.2d at 1215; *Block Industries*, 495 F.2d at 259; *Deere*, 454 S.W.2d at 893. *See also Wyatt v. Kaplan*, 712 F.2d 1002, 1003 (5th Cir.1983); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 491 (5th Cir. 1974); 4 *Wright & Miller* § 1068 at 250 (1969).

 FMA and FSS correctly alleged in their complaint the elements of tortious interference with contract. Under Missouri law, a claim of tortious interference with contract consists of the following elements: (1) a contract, or valid business relationship or expectancy (not necessarily a contract); (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) the absence of justification; and (5) damages resulting from the defendant's conduct. *Salomon v. Crown Life Ins. Co.*, 536 F.2d 1233, 1238 (8th Cir.), *cert. denied*, 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329

(1976); *Friedman v. Edward J. Bakewell, Inc.*, 654 S.W.2d 367, 368–69 (Mo.Ct.App. 1983), *quoting, Fischer, Spuhl, Herzwurm & Assocs., Inc. v. Forrest T. Jones & Co.*, 586 S.W.2d 310, 315 (Mo.1979) (*en banc*); *Stanfield v. National Elec. Contractor's Ass'n, Inc.*, 588 S.W.2d 199, 201 (Mo.Ct. App.1979). The only element in dispute in this case is "the absence of justification,"[5] which has been construed as an "indispensable" element of the tort. *Gerstner Elec., Inc. v. American Ins. Co.*, 520 F.2d 790, 794 (8th Cir.1975); *Harber v. Ohio Nat'l Life Ins. Co.*, 390 F.Supp. 678, 683 (E.D. Mo.1974), *aff'd*, 512 F.2d 170 (8th Cir.1975).

■ The establishment of a *prima facie* case requires more than the allegation that the defendant acted without justification. In order to state a cause of action, it is necessary that facts be alleged from which it could be found that the interference was not justified. *Friedman*, 654 S.W.2d at 369, *quoting, Cady v. Hartford Accident & Indemnity Co.*, 439 S.W.2d 483, 485–86 (Mo.1969); *Pillow v. General Am. Life Ins. Co.*, 564 S.W.2d 276, 281 (Mo.Ct.App.1978). We do not think the plaintiffs have met this requirement. It is implicit, in an action of this type, that the inducement to breach an existing contract may be justified. *Downey v. United Weatherproofing, Inc.*, 363 Mo. 852, 253 S.W.2d 976, 981 (1953). Missouri courts have held that one who has an economic interest in a contract cannot be held liable for inducing its breach, even though motivated by self-interest, in the absence of pleading and proof that the action was accomplished by improper means. *Friedman*, 654 S.W.2d at 369, 369–70; *Pillow*, 564 S.W.2d at 282. *See Salomon*, 536 F.2d

at 1242; *Stanfield*, 588 S.W.2d at 202; W. Prosser & W. Keeton, *The Law of Torts* § 129 at 982, 983, 986 (5th ed. 1984).

■ We think it is clear that GSS/Consolidated had an economic interest in the contract between FMA and FSS. GSS/Consolidated was the ultimate seller of the fruit FMA agreed to obtain for FSS. If FMA procured the fruit elsewhere, GSS/Consolidated stood to lose this business transaction. Further, given the factual circumstances of this case, we do not think GSS/Consolidated's attempts to persuade FSS to keep buying can be characterized as improper. GSS/Consolidated simply went straight to the ultimate buyer of its goods with the same request it had presented previously, albeit unsuccessfully, to all the intermediaries. Finally, we think there was an objective basis to support the belief that GSS/Consolidated had a contract with someone for the sale of strawberries, and it was reasonable to believe that the contract was with the ultimate buyer. GSS/Consolidated had been selling strawberries to FSS for quite some time under terms consistent with the alleged contract.

We make no ruling as to the existence of a contract between GSS/Consolidated and anyone else. Whether GSS/Consolidated did have a contract with any of the relevant parties, and whether its belief in the existence of a contract actually was rooted in an objective basis, are matters which could be explored only during a trial on the merits. We hold only that GSS/Consolidated had an economic interest in the FMA/FSS contract and that it did not use improper means when it interfered with the relations between FMA and FSS. In other words,

---

5. FMA and FSS argue that, under Missouri's conflict of laws provisions, California law would apply in this diversity action, and that California law regards the "justification" element as an affirmative defense which is to be pled and proven by the defendant. *See Herron v. State Farm Mut. Ins. Co.*, 56 Cal.2d 202, 14 Cal.Rptr. 294, 296, 363 P.2d 310, 312 (1961). We do not think it is at all clear that a Missouri court would apply California law in resolving this case. Indeed, we think it likely that a Missouri court would apply Missouri law in this

case. In *Kennedy v. Dixon*, 439 S.W.2d 173, 181, 184 (Mo.1969) (*en banc*), the Missouri Supreme Court adopted the position of the Restatement (Second) Conflict of Laws § 145 for determining which state's law to apply in a tort action. When all other factors are equal, as in this case, it appears that a Missouri court should continue to apply the substantive law of the place where the tort occurred. *Id.* at 185. In this case, the tort alleged by FMA and FSS occurred in Missouri. Thus, we apply Missouri law in resolving this dispute.

GSS/Consolidated's interference was justified.

FMA and FSS have failed to make a *prima facie* showing of an essential element of tortious interference with a contract: "absence of justification." As a result, plaintiffs have failed to state a claim under Missouri's long arm statute. Thus, the district court's dismissal for lack of personal jurisdiction over GSS/Consolidated under Missouri's long arm statute was proper, and we need not reach the question of whether the exercise of jurisdiction over GSS/Consolidated on the tort claim would have satisfied due process standards.

### B. The contract claim

FMA and FSS sought from the district court a declaration that there was no contract between GSS/Consolidated and either of them. The district court dismissed the claim, holding that GSS/Consolidated did not have sufficient contacts with the State of Missouri to satisfy due process standards for the exercise of personal jurisdiction. FMA and FSS claim that this ruling was erroneous. We disagree.

The reach of a state long arm statute is a question of state law, and federal courts are required to accept the interpretation given a statute by the relevant state supreme court. However, the extent to which the reach of a long arm statute is limited by due process is a question of federal law. *Daewoo*, 719 F.2d at 972; *Mountaire Feeds*, 677 F.2d at 653; *Scullin Steel*, 676 F.2d at 311; Again, the Missouri Supreme Court has held that the legislative objective behind Missouri's long arm statute was to extend the jurisdiction of Missouri courts over nonresident defendants to the extent permissible under the due process clause of the Fourteenth Amendment. *State ex rel. Newport v. Wiesman*, 627 S.W.2d 874, 876 (Mo.1982) (*en banc*), *quoting, Deere*, 454 S.W.2d at 892; *Caine*, 600 S.W.2d at 85; *see Daewoo*, 719 F.2d at 972; *Scullin Steel*, 676 F.2d at 311.

In judging minimum contacts to satisfy due process requirement, a court properly focuses on the relationship among the defendant, the forum, and the litigation. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* —— U.S. ——, ——, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984), *quoting, Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977); *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir.1983). Nonresident defendants must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Helicopteros Nacionales,* —— U.S. at ——, 104 S.Ct. at 1872, *quoting, International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Land-O-Nod*, 708 F.2d at 1340, *quoting, Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. at 158; *Newport*, 627 S.W.2d at 878, *quoting, World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

In this circuit, the "minimum contacts" standard has devolved into a consideration of five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Land-O-Nod*, 708 F.2d at 1340, *citing, Aaron Ferer & Sons II*, 564 F.2d at 1215; *Mountaire Feeds*, 677 F.2d at 654. For "even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *World-Wide Volkswagen*, 444 U.S. at 294, 100 S.Ct. at 565.

Unilateral activity of those claiming a relationship with a nonresident defendant is not sufficient and "it is essential in each case that there be some act by

which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). *See Mountaire Feeds,* 677 F.2d at 654; *Scullin Steel,* 676 F.2d at 314, *quoting, Aaron Ferer & Sons II,* 564 F.2d at 1215. For it is a defendant's contacts with the forum state that are of interest in determining whether personal jurisdiction exists, not its contacts with a resident of the forum. *Mountaire Feeds,* 677 F.2d at 655; *quoting, Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.,* 558 F.2d 450, 455 n. 6 (8th Cir.1977); *Scullin Steel,* 676 F.2d at 313.

■ We do not think that GSS/Consolidated's contacts with FMA and FSS satisfied the due process minimum contacts standard. GSS/Consolidated has had no contact with Missouri, nor has it availed itself of the privilege of conducting business within Missouri. All negotiations leading to the sale of strawberries took place in California. GSS/Consolidated's contacts have been limited to phone conversations and written correspondence with FMA and FSS. These contacts are not sufficient, under the due process clause, to justify an exercise of personal jurisdiction over the defendant. *Mountaire Feeds,* 677 F.2d at 656, *quoting, Aaron Ferer & Sons I,* 558 F.2d at 453; *Aaron Ferer & Sons II,* 564 F.2d at 1215. Thus, we hold that the district court correctly determined that it could not exercise personal jurisdiction over GSS/Consolidated on the plaintiffs' contract claim.

We assume that this same result would obtain under Missouri law. Missouri courts have interpreted the phrase "transaction of any business within this state" so as to permit jurisdiction under its long arm statute in situations in which the due process clause would permit jurisdiction. *Newport,* 627 S.W.2d at 876; *see Daewoo,* 719 F.2d at 972; *Scullin Steel,* 676 F.2d at 311. In addition, Missouri courts have required some activity within the state on the part of the nonresident. *Daewoo,* 719 F.2d at 972; *Scullin Steel,* 676 F.2d at 312. *See also TSE Supply Co. v. Cumberland Natural Gas Co.,* 648 S.W.2d 169, 170 (Mo.Ct. App.1983) (phone conversations and written correspondence are insufficient contacts to justify an exercise of personal jurisdiction over a nonresident defendant).

### III. Conclusion

The district court properly dismissed the plaintiffs' tort claim for failure to establish jurisdiction under Missouri's long arm statute, and properly dismissed their contract claim for lack of personal jurisdiction under the due process clause. Accordingly, the verdict is affirmed.