AARON FERER & SONS CO., Debtor and Debtor in Possession, Appellant,

v.

DIVERSIFIED METALS CORPORATION, a division of Diversified Industries, Inc., Appellee.

AARON FERER & SONS CO., Debtor and Debtor in Possession, Appellant,

v.

LEVIN BROTHERS, INC., Appellee.

AARON FERER & SONS CO., Debtor and Debtor in Possession, Appellant,

v.

MUELLER BRASS CO., Appellee.

AARON FERER & SONS CO., Debtor and Debtor in Possession, Appellant,

v.

UNIVERTICAL CORPORATION, Appellee.

AARON FERER & SONS CO., Debtor and Debtor in Possession, Appellant,

v.

TELLCO TRADING CO., Appellee.

AARON FERER & SONS CO., Debtor and Debtor in Possession, Appellant,

v.

GOLDSBORO IRON & METAL CO., Appellee.

Nos. 76–1959 to 76–1963 and 76–1965.

United States Court of Appeals, Eighth Circuit.

Submitted May 19, 1977.

Decided Nov. 9, 1977.

Robert J. Murray (argued), Raymond R. Simon and Stephen G. Olson, Omaha, Neb., filed appendix and briefs, for appellant Aaron Ferer & Sons Co.

James S. Mitchell, Omaha, Neb., argued and filed brief for appellee, Diversified Metals Corp.

Irving B. Epstein, Omaha, Neb. (argued), and Kenneth M. Greene, Greensboro, N. C., on brief, for appellee Levin Brothers, Inc.

Sheldon S. Toll, Detroit, Mich., on brief, for appellee Mueller Brass Co.

Donald C. Hosford, Jr., Omaha, Neb., on briefs, for appellee Mueller Brass Co. and argued and on briefs for appellee Univertical Corp.

Michael A. Nelsen (argued), Keith I. Frederick, Omaha, Neb., and Willard M. Reisz, Los Angeles, Cal., on briefs, for appellee Tellco Trading Co.

James B. Thomas, Omaha, Neb., argued and filed brief, for appellee Goldsboro Iron & Metal Co.

Before VAN OOSTERHOUT, Senior Circuit Judge, and HEANEY and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

These consolidated appeals arise out of the same factual setting as that presented in this Court's recent opinion in *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450 (8th Cir. 1977). The same issue is also presented here: whether the District Court[1] erred in dismissing appellant Aaron Ferer & Sons Company's complaints against the appellee corporations for lack of in personam jurisdiction.

In our prior *Aaron Ferer* opinion we held in a series of consolidated appeals that the corporations over which appellant desired to assert jurisdiction had insufficient contacts with Nebraska, the forum state, to satisfy

Due Process requirements. We noted that the contracts at issue therein between appellant and the appellee corporations were not to be performed in any part in Nebraska; the goods involved in the contracts neither originated in nor were destined for Nebraska; the contracts were not negotiated in Nebraska; they were not executed there; and the appellee corporations employed no salesmen or agents in Nebraska.

■ With the exception of No. 76–1961, *Aaron Ferer & Sons Co. v. Mueller Brass Co.*, discussed *infra*, none of the appeals now before us involve any more contacts with Nebraska than did those in our prior *Aaron Ferer* decision.[2] None of the appel-

1. The Honorable Albert G. Schatz, United States District Court for the District of Nebraska, in Nos. 76–1959, 76–1960, 76–1961, 76–1962, and 76–1963. The Honorable Richard E. Robinson, Senior Judge, United States District Court for the District of Nebraska, in No. 76–1965.

2. The pertinent facts of the contracts that are the subjects of appellant's complaints against these appellee corporations are as follows:

(1) *No. 76–1959, appellee Diversified Metals Corporation.* Diversified is a Missouri corporation with its principal place of business in Hazelwood, Missouri. According to an affidavit submitted by appellant, Diversified and appellant had engaged in a continuous course of business dealings prior to April 24, 1974, the date appellant filed its Chapter XI petition, for over ten years, with transactions totaling in excess of $5,000,000. The contracts at issue in the present action specified that appellant was to deliver copper commodity futures in exchange for copper wirebar. The goods were to be shipped from states outside Nebraska to destinations also outside Nebraska.

(2) *No. 76–1960, appellee Levin Brothers, Inc.* All of the contracts at issue between appellant and Levin, a North Carolina corporation with its principal place of business in Burlington, North Carolina, concerned metal to be sold for appellant by Levin in states outside Nebraska for delivery to destinations outside Nebraska. Prior to the filing of its Chapter XI petition, appellant and Levin had engaged in a continuous course of business dealings for over one year with transactions in excess of $150,000.

(3) *No. 76–1962, appellee Univertical Corporation.* Univertical is a Michigan corporation with its principal place of business in Detroit, Michigan. In the contract at issue herein, appellant agreed to purchase certain metal goods from Univertical, with shipment to be made

from points outside Nebraska to destinations also outside Nebraska. Appellant and Univertical had engaged in a continuous course of business dealings for at least one year prior to April 24, 1974, with transactions in excess of $1,000,000.

(4) *No. 76–1963, appellee Tellco Trading Company.* Tellco, a California corporation with its principal place of business in Beverly Hills, California, contracted to purchase certain metal goods from appellant. The goods were shipped from a point outside Nebraska to a destination also outside Nebraska. Prior to April 24, 1974, appellant and Tellco had engaged in a continuous course of business dealings for over two years, with transactions totaling approximately $250,000.

(5) *No. 76–1965, appellee Goldsboro Iron & Metal Company.* The contracts at issue in appellant's complaint against Goldsboro called for appellant to purchase metal goods from Goldsboro. These goods were to be shipped directly from Goldsboro, a North Carolina corporation with its principal place of business in Goldsboro, North Carolina, and were to be sent to appellant's customer in New York. Appellant's affidavit states that appellant and Goldsboro had engaged in a continuous course of business dealings for approximately ten months prior to the filing of appellant's Chapter XI petition, with transactions totaling $125,000.

In addition, the contracts involved in the above appeals were negotiated by telephone and confirmed by an exchange of contracts. Many of the contracts were negotiated for appellant by a Mr. Leonard Levine, working out of his Illinois office. Mr. Levine acted as appellant's broker for the purchase and sale of metal goods. The general procedure was for appellant to prepare the contracts at its Omaha, Nebraska, office and send them for execution to the respective appellee corporation, which would then return them to appellant in Omaha.

lee corporations has an office, agent or employee in Nebraska, nor has any representative of an appellee corporation ever entered Nebraska for a purpose related to the contracts involved in this lawsuit. The goods that are the subject of these contracts neither originated in nor were destined for Nebraska. The telephone calls and mailings between appellant in Nebraska and appellees in their various states were of the same nature and pattern as were present in *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co., supra,* 558 F.2d at 454. We thus affirm Nos. 76–1959, 76–1960, 76–1962, 76–1963, and 76–1965 on the basis of our prior opinion, in which our legal analysis is set forth in full.

### No. 76–1961 Mueller Brass Co.

Mueller Brass and appellants are both traders and processors of various forms of ferrous and nonferrous metals. Mueller Brass is incorporated and has its principal place of business in Michigan. It has never maintained an office in Nebraska, where appellant maintains its principal office; nor have any of Mueller Brass' employees, salesmen or officers been located in or visited Nebraska in connection with the contracts that are the subject of this lawsuit. The District Court found the contracts between the parties to be part of a course of dealing that extended over a period of five years and involved a volume of business in excess of ten million dollars. The Court also found that only one shipment on a prior contract originated from Ferer's Omaha warehouse.

The bulk of the parties' contracts called for an arrangement whereby Ferer, as broker, would locate a supplier who could satisfy Mueller's needs. The supplier would then ship the material from its plant to Mueller in Port Huron, Michigan. Six purchase contracts and one exchange contract are the subject of the pending litigation. The exchange contract did not involve shipments to or from Nebraska.

Typically, Mueller, as purchaser, would negotiate with Ferer either by telephone or mail. Ferer, as broker/seller would fulfill Mueller's needs either by arranging for shipment from a supplier located outside Nebraska or by sending the metal from its Omaha plant. Because processed metals were scarce in Nebraska, shipments to Mueller originating in Omaha were few, and were limited to scrap metals.

Mueller was a purchaser rather than a seller in each of its transactions with Aaron Ferer. Some jurisdictions have made a distinction between contacts initiated by a seller and contacts initiated by a buyer from outside the state. In these cases, the courts have held that solicitation by a nonresident purchaser for delivery outside the forum state is a more minimal contact than that of a seller soliciting the right to ship goods into the forum state. This distinction was held to be controlling in *Electro-Craft Corp. v. Maxwell Electronics Corp.,* 417 F.2d 365, 368 (8th Cir. 1969), relying upon Judge Blackmun's (now Mr. Justice Blackmun) opinion in *Aftanase v. Economy Baler Company,* 343 F.2d 187 (8th Cir. 1965). *See McQuay, Inc. v. Samuel Schlosberg, Inc.,* 321 F.Supp. 902, 907 (D.Minn.1971);[3] *Guardian Packaging Corporation v. Kapak Industries, Inc.,* 316 F.Supp. 952, 954–55 (D.Minn.1970); *Oswalt Industries, Inc. v. Gilmore,* 297 F.Supp. 307, 312–13 (D.Kan. 1969); *Rath Packing Co. v. Intercontinental*

---

**3.** In the course of his opinion, Judge Neville discussed the minimal nature of a nonresident purchaser's contacts with a forum state:

In sum, what plaintiff asks is that this court hold that any purchaser from any Minnesota based corporation where goods have been manufactured in Minnesota may be sued in the Minnesota courts within due process limitations, and thus in diversity actions in this court, irrespective of whether that defendant has any connection with the State of Minnesota other than that the pur-

chase price is payable in Minnesota and that by the submission of its purchase order the nonresident has engendered some activity within the State. It would seem to this court that to do so would violate traditional standards or notions of fair play and substantial justice and would go beyond the parameters permitted by the Fourteenth Amendment due process clause.

*McQuay, Inc. v. Samuel Schlosberg, Inc.,* 321 F.Supp. 902, 907 (D.Minn.1971).

*Meat Traders, Inc.,* 181 N.W.2d 184, 188 (Iowa 1970); *Marshall Egg Transport Company v. Bender Goodman Company, Inc.,* 275 Minn. 534, 537–38, 148 N.W.2d 161, 164 (1967); *Fourth Northwestern National Bank of Minneapolis v. Hilson Industries, Inc.,* 264 Minn. 110, 117, 117 N.W.2d 732, 736 (1962).

■ While this distinction may be significant in other contexts, we think the ultimate test is whether the defendant, either as seller or buyer, has performed "some act by which [it has] purposefully [availed] itself of the privilege of conducting activities within the forum state thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). *See Vencedor Manufacturing Co., Inc. v. Gougler Industries, Inc.,* 557 F.2d 886 (1st Cir. 1977); *Whittaker Corporation v. United Aircraft Corporation,* 482 F.2d 1079 (1st Cir. 1973).

■ While the facts adduced in a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction must be viewed in the light most favorable to the party opposing the motion, there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist, thereby casting the burden upon the moving party to demonstrate a lack of personal jurisdiction. "Once jurisdiction has been controverted or denied, [the plaintiff has] the burden of proving such facts." *Block Industries v. D. H. J. Industries, Inc.,* 495 F.2d 256, 259 (8th Cir. 1974), *citing McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *see* 4 C. Wright & A. Miller, Federal Practice and Procedure § 1068 at 250 (1969).

This Court has considered the following factors in deciding whether or not a nonresident's contacts with the forum state were sufficient to impose jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *See Caesar's World, Inc. v. Spencer Foods, Inc.,* 498 F.2d 1176, 1180 (8th Cir. 1974).

■ The large dollar volume of sales between appellant and Mueller is significant only to the extent that it might reflect extensive contacts with the forum state. The uncontradicted evidence is to the contrary.[4] In only one of the seven contracts in dispute was merchandise shipped from Omaha. There was no proof offered to show that Mueller performed any purported acts within the forum in relation to the contracts or designated that shipments originate in Nebraska.[5] *See Sterling Nat'l Bank & Trust Co. of New York v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir. 1975).

The only other contacts involved telephone calls and other correspondence. All of the contracts were confirmed from Michigan and all were to be construed under the laws of Michigan. There is no showing in the record that Mueller performed any act with the intention of invoking the benefits and protections of the laws of the forum state. To hold that such minimal contacts as occurred in this case were sufficient to provide a jurisdictional base would be to ignore the territorial limitations on the power of the respective states. *Hanson v. Denckla, supra,* 375 U.S. at 251, 78 S.Ct. 1228.[6] The isolated shipments from Ne-

---

**4.** Most of the sales accounting for the large dollar volume involved transactions intentionally arranged and consummated apart from Nebraska, with only the invoicing coming from Omaha.

**5.** *See Whittaker Corporation v. United Aircraft Corporation,* 482 F.2d 1079, 1084–85 (1st Cir. 1973) (Court affirmed dismissal for lack of personal jurisdiction when defendant's only con-

tact with the forum state was as a passive purchaser exercising no supervision of manufacture within the forum).

**6.** In *Hanson v. Denckla, supra,* 357 U.S. at 251, 78 S.Ct. at 1238, the Supreme Court said:

Those restrictions [on personal jurisdiction] are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the

braska by appellant to Mueller are not on this record distinguishable from the transactions we have held insufficient to supply personal jurisdiction under Nebraska's long arm statute in the other consolidated appeals before us and in *Aaron Ferer & Sons Co. v. Atlas Scrap Iron and Metal Co., supra.* Accordingly, we affirm the orders of the District Court dismissing the appeals for lack of personal jurisdiction.

power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him. *See, International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95.