587 F.Supp. 1105 (1983)
INSTITUTIONAL FOOD MARKETING ASSOCIATES, LTD., and Food Service Systems, Inc., Plaintiffs,
v.
GOLDEN STATE STRAWBERRIES, INC., Defendant.
No. 83-1522C(1).
United States District Court, E.D. Missouri, E.D.
December 6, 1983.
*1106 Mark D. Mittleman, St. Louis, Mo., for plaintiff Institutional Food Marketing Asso. Ltd.
Burton H. Shostak, St. Louis, Mo., for plaintiff Food Service Systems Inc.
Charles A. Newman, Theodore J. MacDonald Jr., St. Louis, Mo., Peter J. Digrazia, Davis & Digrazia, Laguna Hills, Cal., for defendant.

MEMORANDUM
NANGLE, District Judge.
This case is now before this Court on defendant's motion to dismiss for lack of jurisdiction over defendant's person. Defendant contends that exercise of personal jurisdiction over it does not comport with federal due process because defendant has insufficient contacts with the State of Missouri. In the alternative, defendant moves that this cause be transferred to the United States District for the Central District of California or that defendant be granted sufficient time to file a motion for change of venue prior to filing its responsive pleadings. Defendant also moves for reconsideration for this Court's order of August 30, 1983, imposing sanctions on defendant for failure to appear at a deposition.

I. FACTS
Plaintiff Institutional Food Marketing Associates, Ltd. (IFMAL), and plaintiff Food Services Systems, Inc. (FSS), have had an on-going contractual relationship whereby IFMAL acquires and sells strawberries to FSS, which in turn distributes the strawberries to restaurants and other customers. IFMAL is a Missouri corporation with its principal place of business in St. Louis County, and FSS is a Minnesota corporation with its principal place of business in St. Louis City. IFMAL acquired the strawberries for FSS through a California corporation known as Coastal Marketing Associates, Inc. (Coastal), which has its principal place of business in Santa Cruz, California. Coastal obtained strawberries for IFMAL from California packers, of which defendant Golden State Strawberries, Inc. (GSS), was one. GSS is partially owned by Consolidated Processors of California (Consolidated), a food broker. There is a dispute as to whether Coastal was an agent for the purchaser (here IFMAL) or the packer (here GSS) in the transactions in question here, but there is no dispute that it was the packer who paid Coastal's commission.
According to plaintiffs' complaint, the usual procedure for transacting business was that IFMAL and FSS would enter into a contract calling for IFMAL to deliver and FSS to buy a certain amount of strawberries for the upcoming year. IFMAL would then contact Coastal to procure the strawberries needed to fulfill IFMAL's contract with FSS. Coastal would send the invoice directly to FSS for the strawberries it would obtain from packers. FSS would pay Coastal an amount that included the packer's price, Coastal's commission, and IFMAL's commission. After deducting the packer's price and its own commission, Coastal would send the balance to IFMAL.
For the 1982/1983 year, IFMAL and FSS entered into a contract, dated June 7, 1982, similar to its prior contracts. This contract *1107 provided that IFMAL would guarantee FSS 16-18 truckloads of strawberries at a base price of $.64/lb. F.O.B. California; that at least 8 truckloads would be shipped and invoiced by August 31, 1982, and thereafter a carrying charge of $.0125/month would be added to the price of each pound remaining unshipped; that all truckloads remaining unshipped as of April 30, 1983, would be billed and transferred into storage in the name of FSS; and that, after August 30, 1982, "should the price list be less than our contract price plus [FSS's] monthly carrying charge, [FSS] will receive the lower throughout the term of the contract." FSS was thus protected against a drop in the market price of strawberries after August 30, 1982.
Mr. Phillips, President of IFMAL, contacted Mr. Bowen, President of Coastal, to obtain the strawberries needed to fulfill IFMAL's contract with FSS. Bowen in turn contacted Mr. Saveria, President of Consolidated, to obtain strawberries. Bowen and Saveria exchanged documents dated June 11, 1982. Coastal's document listed FSS as the buyer and GSS as the seller of a certain amount of strawberries. Coastal's document contained an item numbered "4)" which stated: "Contract price to be protected against packer list price." Consolidated's document agreed with Coastal's in all respects, including the fact that it listed FSS as the buyer and GSS as the seller, except that Consolidated's June 11 document (Sales Memo # 3719) did not contain a price protection clause as did Coastal's June 11 document (Sales Memo # 8588). On June 21, 1982, Saveria sent a memo to Bowen stating: "Please note that the Item 4 in your memo does not pertain to this sale." The June 21 memo also stated: "Enclosed is our Sales Memo 3719 covering the sale between Food Service Systems & Golden State Strawberries."
Coastal's June 11 Sales Memo # 8588 contained the notation, "See signed contract attached." Because Consolidated never received a copy of a signed contract, Saveria sent another memo to Bowen on August 11, 1982, which stated:
Enclosed is a photocopy of your Sales Memo 8588 covering the sale of frozen strawberries between Food Service Systems and Golden State Strawberries.
Please note your last statement on the sales memo as "See signed contract attached." We have not, to date, received a signed contract either from Coastal Marketing or Food Service Systems. Please look into this for us, and send the signed contract at your earliest convenience.
On August 13, 1982, Bowen responded by sending Saveria a copy of the June 7, 1982, contract between IFMAL and FSS. In addition, on August 17, 1982, Bowen sent a letter to Phillips, President of IFMAL, which stated:
I am attaching a copy of the sales memo from Frank Saveria along with a speed letter covering the Food Service Systems contract. You will note that Golden State is not honoring item no. # 4 outlined on my sales memo 8588 and the paragraph in your contract letter, wherein, we will protect Food Service Systems price against our own price lists.
As a result of these various document exchanges, during June, July and August, 1982, Coastal procured for shipment to FSS 9 truckloads of strawberries from GSS at a price of $.64/lb. However, after August 31, 1982, the list price of strawberries declined below $.64/lb. to around $.60/lb. Bowen and Saveria had several discussions about the price at which GSS would sell strawberries to FSS to fulfill IFMAL's contract with FSS. Saveria's position was that GSS would sell to FSS only at a price of $.64/lb. plus the storage charges from and after September 1, 1982. Because IFMAL's contract with FSS required it to protect FSS from price falls, this was not acceptable to IFMAL. In March, 1983, a conference call took place between Saveria, Linden (Manager of GSS), and Phillips (IFMAL). This call did not produce a solution to the price dispute and Phillips indicated to Saveria and Linden that IFMAL would get strawberries from other sources, which in fact was done.
*1108 On March 17, 1983, Linden sent a mail-gram to Whitman (President of FSS) in Missouri, which stated:
We were advised orally that you are not going to perform under our contract Number 3719 for frozen strawberries. We are hereby giving you notice that we expect performance and ask that you respond directly to me at Golden State Strawberries within 5 days whether or not you intend to perform.
Whitman called Linden and told him that FSS did not have a contract with GSS. Whitman also demanded that IFMAL take action to protect FSS against the claim of GSS, or else FSS would cease doing business with IFMAL. In response, Phillips retained an attorney who sent a mailgram to Linden, informing Linden that he could not find a contract between GSS and IFMAL, FSS or Coastal.
However, Linden continued to make calls to Whitman, and sent another mailgram to Whitman in Missouri on March 31, 1983, which stated:
As of this date you have not responded to our mailgram to you dated March 17, 1983, asking for your response within five days. I have talked to you twice and tried to several other times without resolving the issue.
As Golden State Strawberries, seller, I am notifying you, Food Service Systems, buyer, per Consolidated Processors sales contract # 3719, dated June 11, 1982, that we have 10,800 thirty pound tins of 4 plus 1 sliced strawberries still remaining for your account per the above contract. If there is any unshipped product on April 30th, 1983, any unshipped product will be transferred in storage into your name and invoiced.
This mailgram is to inform you that we will perform in full under this contract and demand that you also perform.
On April 30, 1983, GSS caused a warehouse transfer to be issued at Packers Cold Storage, Inc., in California, transferring 10,800 tins from the name of GSS to that of FSS. The storage warehouse sent an invoice for the storage of these strawberries to FSS in care of Coastal. On the same date, GSS sent its own invoice for all the strawberries, in the amount of $239,760.00, to FSS in care of Coastal. A second invoice from the storage warehouse was sent to FSS in care of Coastal on May 31, 1983. Coastal forwarded all of these invoices to IFMAL.
On May 17, 1983, plaintiffs filed the instant lawsuit in the Circuit Court of St. Louis County, State of Missouri. Defendant removed it to this Court pursuant to 28 U.S.C. § 1441(a). This is an action for declaratory, injunctive and damages relief. In Count I plaintiffs seek a declaration that plaintiffs do not have a contract with defendant. In Counts II and III plaintiffs allege that defendant intentionally and tortiously interfered with a contract between plaintiffs, and plaintiffs seek an injunction against defendant's alleged interference plus actual and punitive damages for such interference. In all the counts, plaintiffs allege that Coastal was the agent of GSS.
Plaintiffs obtained service on defendant through Missouri's Long-Arm Statute, § 506.500, R.S.Mo. (1982), pursuant to Federal Rule of Civil Procedure 4. Defendant moved to dismiss for lack of personal jurisdiction. A ruling on defendant's motion was held in abeyance pending discovery, which has now been completed.

II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION:
In passing on a motion to dismiss for lack of jurisdiction over a non-resident, a federal diversity court is required to engage in a two-step inquiry: first, whether defendant committed one of the acts enumerated in the longarm statute; and second, whether the exercise of personal jurisdiction over defendant does not violate the due process clause of the Fourteenth Amendment. The Land-O-Nod Company v. Bassett Furniture Industries, Inc., 708 F.2d 1338 (8th Cir.1983); Scullin Steel Co. v. National Railway Utilization Corp., 676 F.2d 309, 312 (8th Cir.1982). Plaintiffs, the parties that are seeking to invoke federal jurisdiction, have the burden of establishing that jurisdiction exists, and this burden *1109 may not be shifted to the party challenging the jurisdiction. Mountaire Feeds, Inc., v. Argo Impex, S.A., 677 F.2d 651, 653 (8th Cir.1982). While the facts are viewed in the light most favorable to the plaintiffs, "there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist ...." Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir.1977) (citations omitted). See also Data Disc, Inc., v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir.1977) (plaintiff need only make a prima facie showing of jurisdictional facts through submission of affidavits plus discovery materials); 4 Wright & Miller, Federal Practice and Procedure: Civil § 1068 at 250 (1969).
Missouri's Long-Arm statute provides:
1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:
(1) The transaction of any business within this state;
(2) The making of any contract within this state;
(3) The commission of a tortious act within this state;
(4) The ownership, use, or possession of any real estate situated in this state;
(5) The contracting to insure any person, property or risk located within this state at the time of contracting.
2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.
§ 506.500, R.S.Mo. (1982). Plaintiffs contend that defendant committed three of the acts enumerated in section 506.500: 1) defendant transacted business within this state; 2) defendant made a contract within this state; and 3) defendant committed a tortious act within this state. However, Missouri courts have interpreted the terms of section 506.500 broadly to extend jurisdiction of Missouri courts over non-resident defendants to the extent permissible under the due process clause. State ex rel. Newport v. Wiesman, 627 S.W.2d 874, 876 (Mo. banc 1982); State ex rel. Deere and Company v. Pinnell, 454 S.W.2d 889, 892 (Mo. banc 1970). Therefore, assuming that service of process on defendant was authorized by section 506.500, the central issue is whether the exercise of personal jurisdiction over defendant violates the due process clause.
The due process clause of the Fourteenth Amendment places limits upon the power of a court to exercise personal jurisdiction over a non-resident defendant. The due process clause requires that a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); Land-O-Nod, 708 F.2d 1338 at 1340. Accord World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). The defendant's contacts with the forum state must be purposeful and such that defendant "should reasonably anticipate being haled into court there." World Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567. See also Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).
In this circuit, the due process standard has devolved into a consideration of five factors:
(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.
*1110 Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir. 1977). See Land-O-Nod, 708 F.2d 1338 at 1340. The first three factors are of primary importance and the last two are of secondary importance. Land-O-Nod, 708 F.2d 1338 at 1340.
Plaintiffs' complaint pleads two distinct claims against defendant. One claim seeks a determination of whether there is a contract between plaintiffs and defendant. The second claim alleges tortious interference with contractual relations. This distinction between plaintiffs' claims is important because the minimum contacts necessary to prosecute a tort claim, consistent with due process, are not necessarily the same as those needed to bring a contract action against a non-resident defendant. See Jeanway Industries, Inc., v. Knudson Mfg. Co., 533 F.Supp. 678 (W.D.Ark.1981); Bodine's, Inc., v. Sunny-O, Inc., 494 F.Supp. 1279 (N.D.Ill.1980). Therefore, this Court must apply the above principles separately to each of plaintiffs' claims.
With respect to plaintiffs' claims for a declaration that a contract does not exist between plaintiffs and defendant, it is the opinion of this Court that the exercise of personal jurisdiction over defendant would violate the due process clause and offend "traditional notions of fair play and substantial justice." Defendant's only contacts with Missouri are a few telephone calls and two mailgrams. The nature, quality and quantity of these contacts do not support personal jurisdiction over defendant. The mere use of interstate mail and telephone facilities is not sufficient to satisfy the requirements of due process in a breach of contract action. Mountaire Feeds, Inc., v. Agro Ipex, S.A., 677 F.2d 651 (8th Cir.1982); Scullin Steel Company v. National Railway Utilization Corp., 676 F.2d 309 (8th Cir.1982); Breiner Equipment Co. v. Dynaquip, Inc., 539 F.Supp. 204 (E.D.Mo.1982); TSE Supply Company v. Cumberland National Gas Company, 648 S.W.2d 169 (Mo.App.1983).
Plaintiffs do contend that Coastal was the agent of GSS, not plaintiffs, and therefore GSS has sufficient contacts with Missouri. However, it is the opinion of this Court that plaintiffs have not made a prima facie showing that Coastal was the agent of GSS. Bowen does state in his deposition that he considers himself an agent of the packer, but all of the facts clearly point to a contrary conclusion. The June 7 contract between IFMAL and FSS states that "On behalf of Bill Bowen, Sr./COASTAL MARKETING ASSOCIATES and myself [Phillips], we greatly appreciate your business." This strongly suggests that Coastal was an agent of IFMAL rather than GSS. The transaction of business between Coastal and Consolidated/GSS also strongly suggests that Coastal was not an agent of GSS. When dealing with Saveria, Bowen purported to be negotiating a contract for FSS with GSS. It is absurd to argue that Bowen was an agent of GSS in the transactions involved herein. Finally, in the August 17, 1982, letter from Bowen to Phillips, Bowen referred to IFMAL and Coastal as "we" and referred to Saveria and GSS as "they". For example, Bowen states:
You will note that Golden State is not honoring item no. # 4 outlined on my sales memo 8588 and the paragraph in your contract letter, wherein, we will protect Food Service Systems price against our own price lists.

Therefore, to the extent that plaintiff relies on the assertion that Coastal was the agent of GSS, this Court holds that plaintiffs have not made a prima facie showing of that fact. In the alternative, this Court holds that even if Coastal was the agent of GSS, the contacts with Missouri are still not sufficient to satisfy the due process standard to maintain a contract action against defendant. In this regard, an action to declare that a contract does not exist is analogous to an action for breach of a contract. Royal Globe Ins. Co. v. Logicon, Inc., 487 F.Supp. 1245 (N.D.Ill. 1980) (action for declaration of rights and liabilities of parties under insurance policies dismissed for lack of personal jurisdiction).
*1111 With respect to plaintiffs' allegation that defendant tortiously interfered with the contract between IFMAL and FSS, a slightly different analysis is required. Plaintiffs seek to bring defendant within the jurisdiction of this Court under § 506.500, subd. 1(3), because they allege that defendant committed a tortious act within the State of Missouri. If a non-resident defendant commits an intentional tort in Missouri, it is clear that this single contact is sufficient to meet the due process standard. Block Industries v. DHJ Industries, Inc., 495 F.2d 256, 259 (8th Cir.1974); Elkhart Engineering Corp. v. Dornier Werke, 343 F.2d 861 (5th Cir.1965); 4 Wright & Miller, Federal Practice and Procedure: Civil § 1069 at 257 (1969). Because the jurisdictional facts, where jurisdiction is based upon a single tort, are identical to the merits of the claim, plaintiffs must make a prima facie showing that defendant has in fact committed the tort alleged in the complaint. Block Industries, 495 F.2d at 259.
It is the opinion of this Court that plaintiffs failed to make a prima facie showing that defendant in fact tortiously interfered with the contract between plaintiffs. In Missouri, the elements of the tort of intentional interference with contract, are:
(1) A contract or a valid business relationship or expectancy (not necessarily a contract);
(2) Defendant's knowledge of the contract or relationship;
(3) Intentional interference by the defendant inducing or causing a breach of the contract or relationship;
(4) The absence of justification;
(5) Damages resulting from defendant's conduct.
Salomon v. Crown Life Insurance Co., 536 F.2d 1233, 1238 (8th Cir.1976) (citations omitted); Downey v. United Weatherproofing, Inc., 253 S.W.2d 976 (Mo.1953). It is the opinion of this Court that plaintiffs failed to make a prima facie showing of element 4 above, the absence of justification, and therefore, personal jurisdiction over defendant is not proper.
"An indispensable element of an action for [intentional interference with a contractual relationship] is the absence of justification." Harber v. Ohio National Life Insurance Co., 390 F.Supp. 678, 683 (E.D.Mo.1974). Justification exists where the conduct complained of was undertaken to protect a valid economic interest, or where defendant's conduct was reasonable under the circumstances and done in good faith. Salomon, 536 F.2d at 1239. In the case at bar, plaintiffs complain of defendant's assertion that FSS owed defendant money under an alleged contract between GSS and FSS. Plaintiffs seem to argue that if they can prove that in fact no contract existed between FSS and GSS, then GSS's assertion of such a contract constituted tortious conduct. However, it is the opinion of this Court that plaintiffs must make a prima facie showing that defendant acted maliciously, in bad faith, without belief in the merit of its claim that a contract existed, or without any reasonable basis for believing in the merit of its claim. See Restatement of Torts (Second) § 767, comment on clause (a), at 31 (1979). They have failed to make such a prima facie showing and therefore there is no basis upon which this Court can assume jurisdiction over the person of defendant. At best, plaintiffs made a prima facie showing that defendant negligently believed that a contract existed between GSS and FSS. However, "there is as yet no general recognition of liability for negligent interference with an existing contract ...." Restatement of Torts (Second) § 766C, comment at 24 (1979).
In sum, it is the opinion of this Court that defendant's motion to dismiss for lack of personal jurisdiction over defendant must be granted and plaintiffs' complaint must be dismissed without prejudice. It is not necessary to consider defendant's motion to transfer or for leave to file a motion for change of venue.

III. MOTION FOR RECONSIDERATION OF SANCTIONS
In an order dated August 30, 1983, this Court imposed sanctions on defendant *1112 due to the failure of defendant's officers, Manassero and Linden, to appear for depositions. Defendant now moves for reconsideration of that order. In support, defendant asserts, by affidavit, that defendant's suggestions in opposition to the motion for sanctions were not filed due to inadvertence. This Court finds that defendant's explanation for not filing the suggestions in opposition earlier is adequate and that defendant's excuses for the failure of defendant's officers to appear for deposition are also adequate. Accordingly, this Court's order of August 30, 1983, imposing sanctions on defendant be and is vacated and set aside, and plaintiffs' motion for sanctions be and is denied.