603 F.Supp. 1168 (1985)
Rod E. NOLLMAN d/b/a R.E. Nollman Company, Plaintiff,
v.
ARMSTRONG WORLD INDUSTRIES, INC., Lloyd Manufacturing Co., Inc., and Trans Technology Corporation, Defendants.
No. 84-2339C(1).
United States District Court, E.D. Missouri, E.D.
March 6, 1985.
*1169 Robert J. Albair, Clayton, Mo., for plaintiff.
Barry A. Short, St. Louis, Mo., for defendant Armstrong World Industries, Inc.
Michael B. McKinnis, Judy K. Raker, St. Louis, Mo., for defendants Lloyd Mfg. Co., Inc. and Trans Technology Corp.

MEMORANDUM
NANGLE, Chief Judge.
This case is now before this Court, on the following motions: 1) plaintiff's motion to compel discovery; 2) defendant Lloyd Manufacturing Company, Inc.'s (hereinafter "Lloyd") motion to dismiss Counts III and IV of plaintiff's complaint; and 3) defendant Transtechnology Corporation's (hereinafter "Transtechnology") motion to dismiss for lack of personal jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.
Plaintiff's cause of action arises out of his contract with Lloyd to act as a sales representative for Lloyd in the States of Missouri, Kansas and portions of Southern Illinois. The contract was entered into on or about March 30, 1981, and was terminated by Lloyd effective April 1, 1984. Plaintiff alleges that after termination of his contract, Lloyd entered into a contract with defendant Armstrong World Industries, Inc., (hereinafter "Armstrong"). Lloyd is a wholly-owned subsidiary of Transtechnology.
Plaintiff's complaint consists of four separate counts. Count I is against Armstrong and Transtechnology and alleges that they tortiously interfered with plaintiff's contract with Lloyd. Count II is against Lloyd and alleges that it breached its contract with plaintiff. Count III is against Armstrong, Lloyd and Transtechnology, and alleges that they engaged in a civil conspiracy to breach the contract between plaintiff and Lloyd. Count IV is also against Armstrong, Lloyd and Transtechnology, and is essentially a prayer for punitive damages for the torts alleged in Counts I and III.

I. PLAINTIFF'S MOTION TO COMPEL
Plaintiff moves to compel Lloyd and Transtechnology to respond to plaintiff's *1170 interrogatories and requests for production of documents. Said defendants' response to plaintiff's motion stated that said defendants shall on or before February 25, 1985, respond to plaintiff's interrogatories and requests for production of documents. Accordingly, plaintiff's motion is denied as moot, subject to said defendant's compliance with their representations.

II. TRANSTECHNOLOGY'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED
Defendant Transtechnology asserts two alternative bases for dismissing it from this action. First, it argues that this Court lacks personal jurisdiction over it. Second, it argues that Counts I, III and IV of plaintiff's complaint, which are the only counts in which Transtechnology is named as a defendant, fail to state a claim upon which relief can be granted. Because this Court holds that it lacks in personam jurisdiction over Transtechnology, it is unnecessary to reach Transtechnology's arguments concerning the sufficiency of plaintiff's complaint.
In passing on a motion to dismiss for lack of jurisdiction over a non-resident, a federal diversity court is required to engage in a two-step inquiry: first, whether defendant committed one of the acts enumerated in the long-arm statute; and second, whether the exercise of personal jurisdiction over defendant violates the due process clause of the fourteenth amendment. The Land-O-Nod Company v. Bassett Furniture Industries, Inc., 708 F.2d 1338 (8th Cir.1983); Scullin Steel Co. v. National Railway Utilization Corp., 676 F.2d 309, 312 (8th Cir.1982). Plaintiff, the party that is seeking to invoke federal jurisdiction, has the burden of establishing that jurisdiction exists, and this burden may not be shifted to the party challenging the jurisdiction. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 (8th Cir. 1982). While the facts are viewed in the light most favorable to the plaintiffs, "there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist...." Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir.1977) (citations omitted). See also Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir.1977) (plaintiff need only make a prima facie showing of jurisdictional facts through submission of affidavits plus discovery materials); Greycas, Inc. v. Anderson, 584 F.Supp. 894, 895-96 (E.D.Mo.1984); 4 Wright & Miller, Federal Practice and Procedure: Civil § 1068 at 250 (1969).
Missouri's Long-Arm statute provides:
1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:
(1) The transaction of any business within this state;
(2) The making of any contract within this state;
(3) The commission of a tortious act within this state;
(4) The ownership, use, or possession of any real estate situated in this state;
(5) The contracting to insure any person, property or risk located within this state at the time of contracting.
2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.
§ 506.500, R.S.Mo. (1982).
The due process clause of the fourteenth amendment places limits upon the power of a court to exercise personal jurisdiction over a non-resident defendant. The due process clause requires that a defendant have certain minimum contacts *1171 with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); Land-O-Nod, 708 F.2d at 1340. Accord World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). "In judging minimum contacts, a court properly focuses on `the relationship among the defendant, the forum, and the litigation.'" Calder v. Jones, ___ U.S. ___, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984) (citations omitted). See also Helicopteros Nacionales de Colombia S.A. v. Hall, ___ U.S. ___, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). The defendant's contacts with the forum state must be purposeful and such that defendant "should reasonably anticipate being haled into court there." World Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567. See also Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).
In this circuit, the due process standard has devolved into a consideration of five factors:
(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.
Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir. 1977). See Land-O-Nod, 708 F.2d at 1340. The first three factors are of primary importance and the last two are of secondary importance. Id.
In the case at bar, plaintiff contends that Transtechnology was subject to service of process under Missouri's long-arm statute, because Transtechnology transacted business within this State, made contracts within this State, and committed a tort within this State. According to affidavits submitted on behalf of Transtechnology, it has one customer in Missouri which customer represents 2.5% of its national sales. In addition, during the period from September 15, 1981, through August 17, 1984, Transtechnology maintained a sales representative in Missouri, whose sole function was to service Transtechnology's single Missouri customer. However, to the extent that these contacts constituted transacting business within Missouri or making contracts within Missouri, the instant cause of action does not arise from the "doing" of said acts. Scullin Steel Company v. National Railway Utilization Corporation, 676 F.2d 309, 312 (8th Cir.1982); State ex rel. Newport v. Wiesman, 627 S.W.2d 874, 877 (Mo.1982). Accordingly, Transtechnology was not subject to service of process under Missouri's long-arm statute by reason of § 506.500-1.(1) and (2), R.S.Mo. (1982), and the only way that Transtechnology was subject to long-arm service of process was if Transtechnology committed a tort within Missouri.
The torts which Transtechnology allegedly committed in Missouri, are tortious interference with contract and a civil conspiracy. Recently, this Court discussed the approach that should be taken in addressing a motion to dismiss for lack of personal jurisdiction where the claimed contact is an intentional tort, as follows:
If a non-resident defendant commits an intentional tort in Missouri, it is clear that this single contact is sufficient to meet the due process standard. Block Industries v. DHJ Industries, Inc., 495 F.2d 256, 259 (8th Cir. 1974); Elkhart Engineering corp. v. Dornier Werke, 343 F.2d 861 (5th Cir. 1965); 4 Wright & Miller, Federal Practice and Procedure: Civil § 1069 at 257 (1969). Because the jurisdictional facts, where jurisdiction is based upon a single tort, are identical to the merits of the claim, plaintiffs must make a prima facie showing that defendant has in fact committed the tort alleged in the complaint. Block Industries, 495 F.2d at 259.
*1172 Institutional Food Marketing Associates, Ltd. v. Golden State Strawberries, Inc., 587 F.Supp. 1105, 1111 (E.D.Mo.1983), aff'd, 747 F.2d 448 (8th Cir.1984). In affirming this Court's decision, the Eighth Circuit explained that "[t]he establishment of a prima facie case requires more than the allegation that the defendant" committed the tort. Golden State Strawberries, Inc., at 454. The plaintiff must allege facts from which it could be found that all the elements of the tort are met. Id. In Golden State Strawberries, Inc., the plaintiff alleged that defendant had tortiously interfered with a contract and the basis of long-arm jurisdiction was the commission of said tort. This Court held that the plaintiffs failed to make a prima facie showing that the defendant tortiously interfered with the contract between the plaintiffs, because the plaintiffs failed to make a prima facie showing that the defendant lacked justification for its conduct, an indispensible element of the tort.
In the case at bar, plaintiff failed to make a prima facie showing that Transtechnology in fact tortiously interfered with the contract between plaintiff and Lloyd and that Transtechnology entered into a conspiracy with Lloyd and Armstrong to breach said contract. Plaintiff simply has not alleged any facts from which this Court could find that Transtechnology had any involvement in the dealings between Armstrong, Lloyd and plaintiff, that it intentionally caused a breach of the contract between Lloyd and plaintiff or that any conduct on the part of Transtechnology was lacking in justification. Because plaintiff failed to make a prima facie showing that the alleged tortious acts were committed by Transtechnology, there is no basis upon which this Court can assume jurisdiction over the person of Transtechnology.
Accordingly, Transtechnology's motion to dismiss plaintiff's complaint against it for lack of personal jurisdiction is granted and said complaint is dismissed as to defendant Transtechnology. Because this Court holds that Transtechnology was not subject to service of process under Missouri's long-arm statute, this Court need not decide whether assertion of in personam jurisdiction over Transtechnology comports with due process.

III. LLOYD'S MOTION TO DISMISS COUNTS III AND IV
Lloyd moves to dismiss Counts III and IV of plaintiff's complaint because said counts fail to state a claim against Lloyd upon which relief can be granted. Specifically, Lloyd argues that a claim of conspiracy to induce a breach of contract cannot be asserted against a party to the agreement. Lloyd relies on language to that effect in Meyer v. Bell & Howell Co., 453 F.Supp. 801, 802 (E.D.Mo.1978). Because the claim for punitive damages against Lloyd in Count IV is dependent on the civil conspiracy claim in Count III, Lloyd argues that if Count III is dismissed, then Count IV must also be dismissed as to Lloyd.
This Court's analysis begins with the premise that a tort action does not arise from a breach of contract, unless the basis of the tort is a duty that is "superimposed by operation of law as an incident of the relationship between the parties rather than the contract." General Dynamics Corporation v. Selb Manufacturing Company, 481 F.2d 1204, 1216 (8th Cir.1973). See also Miller v. American Insurance Company, 439 S.W.2d 238, 241 (Mo.Ct.App. 1969); State ex rel. Cummins Missouri Diesel Sales Corporation v. Eversole, 332 S.W.2d 53, 58 (Mo.Ct.App.1960). In each of these cases, the plaintiff was attempting to make a tort out of the very conduct which constituted the breach of the contract. For example, in Miller the plaintiff essentially alleged that the defendant negligently repaired her roof in violation of the contract, and in Eversole the plaintiff alleged that the defendant negligently repaired an engine in violation of the contract.
The allegations in the case at bar, however, are that Lloyd, a party to the contract, and Armstrong, a company that was not a party to the contract, wrongfully conspired to induce Lloyd to breach its contract with plaintiff. Lloyd argues that, *1173 under Meyer, it cannot be liable in tort for a civil conspiracy to induce the breach of its contract with plaintiff. In Meyer, then Chief Judge Meredith of this District held that two parties to a contract cannot be liable for a conspiracy to induce its breach. Meyer, 453 F.Supp. at 802. In the opinion of this Court, the Meyer decision is of limited value because it failed to cite any authority for its holding. Moreover, the language that "a party to a contract cannot be liable for conspiracy to induce its breach", is actually dicta, insofar as it relates to the tort of civil conspiracy, because it was made in the context of addressing plaintiff's allegation that two parties to the contract were liable for tortious interference with a contractual relationship. Id. Further, because Meyer dealt with a claim against two parties to a single contract, the language of Meyer is correct with respect to both the tort of intentional interference with a contract and the tort of civil conspiracy to induce a breach of contract. In this regard, Meyer is distinguishable from the case at bar, because here a civil conspiracy is being alleged against a party to a contract and a third party who was not a party to said contract.
In the opinion of this Court, plaintiff's cause of action in Count III against Lloyd states a claim upon which relief can be granted under well-established Missouri authority. In Rosen v. Alside, Inc., 248 S.W.2d 638 (Mo.1952), the Supreme Court of Missouri held that "[a] person who by conspiring with another or by collusive agreement with him assists him to violate his contract with a third person and to obtain the benefit of that contract for himself commits an actionable wrong." Id. at 643 (citations omitted). In Rosen, the court summarized the legal principles underlying the tort of civil conspiracy, as follows:
A civil conspiracy is an agreement or understanding between two or more persons to do an unlawful act, or to use unlawful means to do an act which is lawful.... Strictly speaking, there has been no distinct form of writ or action of conspiracy; but the action sounds in tort, and is of the nature of an action on the case upon the wrong done under the conspiracy alleged.... The gist of the action is not the conspiracy, but the wrong done by acts in furtherance of the conspiracy or concerted design resulting in damage to plaintiff.... A combination for the purpose of causing a breach of contract has been held to be an unlawful conspiracy.
Id. (citations omitted). In Rosen, the plaintiff had an exclusive dealership contract with the defendant supplier. The plaintiff sued both the supplier and a third party who took over the plaintiff's exclusive dealership duties, alleging a civil conspiracy between the two to breach the plaintiff's contract with the supplier.
Rosen continues to be good law. In Mills v. Murray, 472 S.W.2d 6 (Mo.Ct.App. 1971), an employer sued his former employee and a third party alleging that the employee and the third party were liable for a civil conspiracy to cause the employee to breach his restrictive covenant with the employer. Relying on Rosen, the Mills Court affirmed a judgment for the plaintiff employer. The following discussion from the Mills opinion is particularly instructive in the case at bar:
[A] conspiracy does not give rise to a civil action unless something is done pursuant to which, absent the conspiracy, would create a right of action against one of the defendants, if sued alone.... In the case before us plaintiffs seek to vindicate their right to the performance of the restrictive covenant provision of their employment contract with [the employee] and their right to enjoy its benefits. These are rights which courts recognize and protect. "(T)he intentional interference with the contractual relation without just cause so as to effect a breach of the contract is a wrong for which the wrong doer may be held accountable in damages." ... And a person who conspires with another to induce an unjustified violation of his contract with a third person commits an actionable wrong.... This rule has been extended in numerous cases, by persuasive reasoning, to hold one liable for conspiracy to breach his own contract.
*1174 Id. at 13 (citations omitted). Similarly, in Smith v. Welch, 611 S.W.2d 398 (Mo.Ct. App.1981), the court upheld a civil conspiracy action by a party to a contract against the other party to the contract and a third party. In Smith, a real estate broker who had an exclusive listing contract with the defendant property owner, sued another real estate broker and the property owner alleging that they engaged in a civil conspiracy to violate the property owner's exclusive listing contract with the plaintiff real estate broker.
Applying Rosen, Mills and Smith to the facts of this case, it is the opinion of this Court that Count III of plaintiff's complaint does state a cause of action against Lloyd. Here, as in Mills, Lloyd is alleged to have conspired with Armstrong to induce an unjustified violation of Lloyd's contract with plaintiff. Armstrong allegedly committed an unlawful act and Lloyd may be held jointly and severally liable for his alleged participation in Armstrong's wrongful conduct, independent of Lloyd's liability under the contract.
Because Count III of plaintiff's complaint states a cause of action which amounts to an independent, willful tort, plaintiff's claim for punitive damages in Count IV also states a valid claim and will not be dismissed. Williams v. Kansas City Public Service Company, 294 S.W.2d 36, 40 (Mo.1956).