**WHITMIRE RESEARCH
LABORATORIES, INC.,**
Plaintiff,

v.

**P.C.O. SUPPLY, INC., and
Northeastern Associates,
Inc., Defendants.**

**No. 90–0816C(6).**

United States District Court,
E.D. Missouri.

Dec. 17, 1990.

Gerard F. Hempstead, Robert J. Selsor, St. Louis, Mo., for plaintiff.

Howard M. File, Lee, File & Amtzis, Staten Island, N.Y., for defendants.

## MEMORANDUM AND ORDER

GUNN, District Judge.

This matter is before the Court on the defendants' motions to dismiss, or in the alternative to transfer this action, and to stay discovery, and on the plaintiff's motion to compel discovery.

This case is a declaratory judgment action in which plaintiff seeks a determination respecting the contractual rights of the parties, and of an alleged violation by it of the antitrust regulations. According to the complaint, the facts which led to this controversy are as follows. Plaintiff entered into an agreement in March 1989, whereby defendant Northeastern became a distributor for plaintiff's products for a term ending December 31, 1989. In September 1989, plaintiff was advised that defendants Northeastern and P.C.O. were merging, and would become known as P.C.O. Supply. Pursuant to that merger agreement, William Hahn, the sole shareholder of Northeastern, would receive a bonus of $37,500 if plaintiff would enter into another distribution agreement with P.C.O. Supply, or the entity resulting from the merger.

P.C.O. Supply has attempted, on several occasions, to obtain a distributorship from plaintiff. After the merger, plaintiff continued to supply defendant Northeastern with its products but notified it on January 15, 1990 that plaintiff would not renew the distributorship agreement. Plaintiff claims in this complaint that the purchase of the shares of Northeastern by P.C.O. represents an attempt to acquire the distributorship by assignment without the prior, required consent of the plaintiff.

About the same time that plaintiff filed this complaint, defendants Northeastern and P.C.O., and Bill Cappadona, president of P.C.O., filed a complaint against York Chemical Company, Whitmire, and five un-

known defendants, in the United States District Court, Eastern District of New York. In that complaint, the plaintiffs allege breach of contract (the same at issue here), restraint of trade, and defamation.

## MOTION TO DISMISS/TRANSFER

In this motion, defendants contend that plaintiff's complaint should be dismissed because this Court lacks personal jurisdiction over them, or in the alternative, that the complaint should be transferred to the eastern district of New York where the other action is pending. In support of the motion, defendants state that the principal place of business and sole office of P.C.O. is located in New York, and that P.C.O. Supply does have an office in New Jersey. In addition, defendant Northeastern's principal place of business is in New Jersey, and its operations are limited to New Jersey and New York. Plaintiff Whitmire, on the other hand, is a Missouri corporation which markets its products nationwide and employs regional agents to assist in conducting its business activities.

Defendants argue that all their contacts with plaintiff were made outside of the state of Missouri, either by telephone or mail, or through plaintiff's regional agent in the New York area. The original distributorship agreement was signed by plaintiff in Missouri and by defendant Northeastern in New Jersey, and all orders for products were placed by mail or telephone. Therefore, defendants claim that there were not sufficient contacts with the state of Missouri in order to support this Court's exercise of jurisdiction over them.

In response, plaintiff states that although many of the contacts did occur by mail or telephone, that defendant P.C.O. advertises its products in national magazines which are circulated in Missouri, solicits orders by nationwide mailings, and offers a toll-free "800" telephone number for such purposes. Furthermore, the original distributorship agreement between plaintiff and Northeastern contained a choice of law provision that it was governed by the laws of Missouri. The invoices which accompanied each shipment of plaintiff's products also provide, on the back, that Missouri law governs those transactions. Finally, it appears that Mr. Cappadona visited St. Louis in 1989 for the sole purpose of discussing the dispute with attorneys here in St. Louis. *See* affidavits of Stuart Zimbalist and Gary Curl, submitted by plaintiffs.[1]

■ When considering a motion to dismiss for lack of personal jurisdiction over a non-resident defendant, the court is required to engage in a two-step inquiry: first, to determine whether the defendant committed one of the acts enumerated in the forum state's long-arm statute, and second, to determine whether the defendant maintained sufficient contacts with the forum state related to the cause of action, such that maintenance of the suit does not offend the Fourteenth Amendment's due process clause. *CPC–Rexcell, Inc. v. La Corona Foods*, 912 F.2d 241 (8th Cir.1990).

With respect to the first determination, plaintiff asserts that this Court has jurisdiction over defendants pursuant to Mo. Rev.Stat. § 506.500(1), (2), which provides,

> Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts: (1) the transaction of any business within this state; (2) the making of any contract within this state.

A case involving facts very similar to this action is *Scullin Steel v. National Railway Utilization Corp.*, 676 F.2d 309

---

1. *See also* defendants' reply memorandum at page 7, which provides: "Furthermore, the fact that the defendant, Mr. Cappadona, traveled to St. Louis to meet with the plaintiff and plaintiff's counsel is irrelevant in the consideration of 'minimum contacts' with the forum state because such an event occurred after the present dispute arose and was done in a good faith effort to resolve the parties' difficulties and to avoid unnecessary litigation."

(8th Cir.1982). In that case, the nonresident defendant contracted with the resident plaintiff to purchase certain items. All negotiations and contacts were made outside of the state of Missouri, or by mail or telephone. Payments were made by the defendant to St. Louis, and the product was shipped to the defendant from St. Louis. In determining whether the activities constituted the "transaction of any business", the court held that the activities were insufficient within the meaning of the Missouri long-arm statute and declined to assert jurisdiction.

The facts of that case are virtually identical to this case, with one exception. In *Scullin Steel*, none of the defendant's personnel ever visited Missouri in connection with the agreement at dispute in the action. However, in this particular case, it is undisputed that the president of P.C.O. Supply visited Missouri for the sole purpose of discussing the dispute with attorneys, and possibly with representatives of plaintiff. This Court must now determine whether that single visit was sufficient to establish jurisdiction.

In *American Hoechst Corp. v. Bandy Laboratories, Inc.*, 332 F.Supp. 241 (W.D. Mo.1970), the court held that a single business conference conducted in Missouri at the inception of the business dealings between the parties was sufficient to establish jurisdiction as the "transaction of any business." Furthermore, in *Watlow Electric Manufacturing Co. v. Sam Dick Industries, Inc.*, 734 S.W.2d 295 (Mo.App. 1987), the court found that a single, post-contractual visit made by the chief engineer of the defendant, which was to finalize the design of a product essential in the completion of the contract at issue, did constitute the transaction of business within the meaning of the long-arm statute.

■ In this case, this Court finds that all of the factors enumerated by the plaintiff, combined with Cappadona's trip to St. Louis for the purpose of discussing with attorneys, and possibly with plaintiff's representatives, the dispute at issue in this case, are sufficient to constitute the transaction of business within the meaning of Mo.Rev.Stat. § 506.500(1).

The Court now must consider whether jurisdiction is proper within the meaning of the due process clause. Such is appropriate where there is a substantial and continuing relationship purposefully made with a party so long as "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464, 105 S.Ct. 2174, 2177, 85 L.Ed.2d 528 (1984). The defendant's contacts with the forum state must be purposeful and such that it "should reasonably anticipate being haled into court there." *World–Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ In order to determine if the exercise of jurisdiction in this case violates due process, the Court must consider the following factors, all of which need not be present: (1) the quantity of contacts with the forum state; (2) the nature and quality of the contacts with the forum state; (3) the relationship of the cause of action to the contacts with the forum state; (4) the interest of the state in providing a forum for its residents; and (5) the convenience of the parties. *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir.1977).[2] Since the Court has determined that the defendants' contacts were sufficient to establish jurisdiction under the Missouri long-arm statute, and since the long-arm statute "provide[s] for jurisdiction within the specific categories enumerated in the statute, to the full extent permitted by the due process clause of the Fourteenth Amendment," the Court finds sufficient quantity and quality of contacts in this case. *See Metal Service Center of Georgia, Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984). The choice of law clauses in the distributorship agreement and the invoices, invoked the

---

**2.** The last two factors are of secondary importance and are not determinative. *See Aaron* *Ferer, supra,* at 1210.

benefit and protection of Missouri's laws for both parties, and defendants could reasonably anticipate that its actions would have consequences in Missouri. *See New Dawn Natural Foods v. Natural Nectar Corp.*, 670 F.Supp. 869 (E.D.Mo.1987). Therefore, through such language, defendants could reasonably anticipate being haled into court here. *See Woodson, supra.* Finally, the cause of action has definite contacts with the forum state, in that plaintiff's operations are located here, and defendant purposefully solicited plaintiff in attempting to obtain its distributorship. The interest of the state in providing a forum for its residents is apparent, while the convenience factor balances out between the parties. Therefore, the Court finds that the factors weigh in favor of jurisdiction within the meaning of the due process clause.

## MOTION TO TRANSFER

■ In the alternative, defendants move to transfer this action to the Eastern District of New York. According to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." According to 28 U.S.C. § 1391, an action where jurisdiction is not founded solely on diversity may be brought "only in the judicial district where all defendants reside, or in which the claim arose, . . . ." Since this is a declaratory judgment action, filed pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57, it is not founded solely on diversity. However, all the defendants do not reside in New York, the prospective forum, and it is unclear to this Court (and has not been briefed by the parties), as to where the claim actually arose. Therefore, the Court cannot with certainty say that this action "might have been brought" in the eastern district of New York and therefore will deny the motion to transfer.

## DISCOVERY MOTIONS

Defendants filed a motion to stay discovery, pending the determination of this motion to dismiss or transfer, and plaintiff filed a motion to compel, claiming it needed certain discovery in order to properly respond to the motion to dismiss/transfer. Since this Court is now ruling in favor of plaintiff with respect to the motion to dismiss/transfer, defendants' motion to stay is moot. The Court will also deny without prejudice plaintiff's motion to compel and grant defendants twenty days in which to respond to the discovery requests. If, at that time, defendants do not respond or otherwise object, plaintiff may renew its motion to compel.

Accordingly,

IT IS HEREBY ORDERED that defendants' motion to dismiss, or in the alternative to transfer, is denied.

IT IS FURTHER ORDERED that defendants' motion to stay discovery is denied as moot.

IT IS FURTHER ORDERED that plaintiff's motion to compel is denied without prejudice and defendant shall be granted twenty days in which to respond to plaintiff's discovery requests.